### Kenneth WASHINGTON, Appellant,

v.

### Robert L. BAXTER, Jr., Appellee.

Supreme Court of Pennsylvania.

Submitted April 22, 1998.

Decided Oct. 29, 1998.

734

James A. Nettleton, Jr., Lancaster, for Kenneth Washington.

John Philip Stengel, Lancaster, for Robert L. Baxter, Jr.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

### OPINION OF THE COURT

CAPPY, Justice.

The question presented in this appeal is whether summary judgment was properly entered against Kenneth Washington ("Appellant"), a limited tort elector, in his action for noneconomic losses arising out of an automobile accident. Because we find that Appellant has not presented sufficient evidence to show that he suffered a serious impairment of a body function, and therefore has not shown he is entitled to recover noneconomic damages, we affirm the entry of summary judgment against Appellant.

The record reveals [1] that on April 15, 1994, Appellant was operating a motor vehicle which was struck by a vehicle driven by Robert L. Baxter ("Appellee"). As a result of the accident, Appellant suffered injuries which included cervical strain or sprain, cuts and contusions, as well as an injury to his right foot. The injury to the foot was diagnosed as a mild sprain or strain. St. Joseph Hospital Emergency Room Records, 4/15/94. He was treated at a hospital emergency room that day, received a prescription-strength analgesic,[2] and was discharged within a few hours. Id.; Deposition, 5/05/95, at 23.

Immediately after the accident, Appellant was unable to work at his two jobs, both of which required him to perform the bulk of his work while on his feet. At his first job, where he worked a forty-eight hour a week schedule, he was unable to report to work for approximately four or five days. Deposition, 5/05/95, at 39. At his second job, where he worked once a week for three or four hours, Appellant did not report for work for approximately one to two months. Deposition, 5/05/95, at 51.

Approximately five months after the accident, Appellant began treating with Dr. Douglas Bream. Dr. Bream indicated that there was "some type of subtalar joint [3] arthritis or coalition in the right foot," and that Appellant might need to utilize orthotic heel lifts. Attachments to Plaintiff's Response to Defendant's Motion for Partial Summary Judgment, 10/12/95.[4] As part of Appellant's

---

1. As this is a summary judgment matter, we view the record in the light most favorable to Appellant as the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. *Pennsylvania State University v. County of Centre*, 532 Pa. 142, 144–145, 615 A.2d 303, 304 (1992).

2. Deposition testimony indicates that the analgesic was Ibuprofen.

3. The subtalar joint is below the talus in the foot. H. Winter Griffith, *Complete Guide to Sports Injuries* (1986).

4. Two different documents, purportedly generated by Dr. Bream, were appended to Plaintiff's Response to Defendant's Motion for Partial Summary Judgment. As noted by the trial court

below, these documents from Dr. Bream were not sworn to and did not contain a statement relating to unsworn falsification to authorities; one of the documents does not even bear the signature of Dr. Bream. These documents therefore could not be used to support Appellant's position that summary judgment should not be entered against him as they were not competent evidence. *See* Pa.R.C.P. 1035 (1995 version) ("any party may move for summary judgment on the pleadings and any depositions, answers to interrogatories, admissions on file and supporting affidavits."); Pa.R.C.P. 76 (Definition of "affidavit"). Yet, the trial court nonetheless considered these documents in rendering its decision on the summary judgment motion. In light of this action of the trial court, and as we can find no indication in the record that Appellee ever

treatment regimen, Dr. Bream administered one injection of cortisone into Appellant's foot. Dr. Bream also stated that Appellant had limited range of motion in one of the joints in his right foot; he did not, however, comment on whether that limitation was minimal or severe. *Id.*[5]

Appellant was deposed approximately one year after the accident. At that time, Appellant testified that the injury still caused him pain roughly every other week, and that his ankle was often swollen. *Id.* at 43. Furthermore, he stated that he was able to perform his normal job responsibilities as he had been able to prior to the accident. Deposition, 5/05/95, at 44. Finally, the only aspect of his life to which Appellant could point to as being changed as a result of the accident was that he could no longer use a lawn mower that had to be pushed, but instead must use a riding mower. Deposition, 5/05/95, at 64.

At the time of the accident, Appellant was insured under an automobile insurance policy issued by State Farm Mutual Automobile Insurance Company. Under this policy, Appellant had elected the limited tort option pursuant to the provisions of § 1705 of the Motor Vehicle Financial Responsibility Law ("MVFRL").[6] Section 1705 states in pertinent part that

> [e]ach person who elects the limited tort alternative remains eligible to seek compensation for economic loss sustained in a motor vehicle accident as the consequence of the fault of another person pursuant to

applicable tort law. Unless the injury sustained is a serious injury, each person who is bound by the limited tort election shall be precluded from maintaining an action for any noneconomic loss . . . .

75 Pa.C.S. § 1705(d).[7] The MVFRL defines "serious injury" as "a personal injury resulting in death, serious impairment of body function or permanent serious disfigurement." 75 Pa.C.S. § 1702. Thus, while an insured who has elected the limited tort option remains eligible to seek compensation for economic loss sustained in a motor vehicle accident caused by the negligence of another, the insured will be precluded from maintaining an action for any noneconomic losses unless the insured can show that his injuries cross the "serious injury" threshold.

At the close of discovery, Appellee filed a motion for partial summary judgment, asserting that Appellant's status as a limited tort elector precluded his recovery for noneconomic damages because his injuries were not serious. The trial court, relying on the Superior Court's decision in *Dodson v. Elvey,* 445 Pa.Super. 479, 665 A.2d 1223 (1995) *allocatur granted,* 544 Pa. 608, 674 A.2d 1072 (1996), granted Appellee's motion for partial summary judgment. Relying on the Superior Court's *Dodson* decision, the trial court concluded that a determination regarding the seriousness of a limited tort elector's injuries must initially be made by the trial court judge. Tr. ct. slip op. at 3. The trial court

---

**5.** Although Appellant repeatedly characterizes his injuries as consisting of a broken bone in his foot, *see* Appellant's brief at 6, there is no indication in the record that any of his physicians expressed such an opinion within a reasonable degree of medical certainty. Dr. Bream did state in an unsigned, unsworn note written about one of his initial consultations with Appellant that there "could be an old fracture" in Appellant's right foot. Yet, there was no further indication as to whether Dr. Bream had indeed concluded that there was an old fracture in Appellant's right foot. As Dr. Bream never expressed an opinion, within a reasonable degree of medical certainty, that a bone in Appellant's foot had been broken, we are unable to assume the existence of such a fracture in examining the propriety of granting

objected to the consideration of these documents, we, too, shall consider these documents in rendering our decision.

Appellee's summary judgment motion. *See Commonwealth v. Stoltzfus,* 462 Pa. 43, 337 A.2d 873 (1975) (a medical opinion is sufficient to support a finding when the opinion is given within a reasonable degree of medical certainty).

**6.** The statutory language relating to the limited tort option was enacted as part of the 1990 omnibus amendments to the MVFRL. Act 6 1990, Feb. 7, P.L. 1, No. 6, 75 Pa.C.S. §§ 1701 *et seq.* ("Act 6").

**7.** Section 1705(d) also provides certain exceptions to the limitations placed on tort recovery. For example, one of these exceptions provides that a limited tort elector who has not suffered a serious injury may still recover for his noneconomic losses where he was injured while a passenger in a vehicle other than a private passenger motor vehicle. We note that none of these exceptions, however, is applicable in this case.

emphasized that in making this determination, the "'judge should not focus on the injury but should focus on the nature and extent of plaintiff's impairment as a consequence of the injury.'" Tr. ct. slip op. at 4 (citing *Dodson*, 665 A.2d at 1231). The trial court stated that the facts of this matter, when taken in the light most favorable to Appellant as the non-moving party, established that Appellant suffered from continued pain, inflammation, and "arthritic changes" which may necessitate the wearing of orthotic heel lifts. Tr. ct. slip op. at 5. The trial court went on to note that since the accident, Appellant had to use a riding mower rather than a push mower. Finally, the trial court noted that after a brief absence following the accident, Appellant had returned to both of his pre-accident positions of employment with no reduction in responsibilities. The trial court concluded that these facts, as a matter of law, did not constitute a serious injury and therefore granted Appellee's motion for partial summary judgment.

Appellant filed an appeal from that order to the Superior Court; the Superior Court quashed that appeal as interlocutory. The matter was returned to the trial court where an arbitration award was entered which settled all of the remaining issues. At that juncture, Appellant filed his appeal with the Superior Court, again challenging the trial court's determination that as a matter of law he had not suffered a serious injury.

The Superior Court, in a brief memorandum opinion, affirmed. Relying exclusively on its *Dodson* opinion, the Superior Court stated that the threshold question of whether Appellant's injuries were serious was one for a trial court judge to answer prior to the matter being presented to a jury. The Superior Court agreed with the trial court that Appellant had failed to establish that he had suffered a serious injury and therefore affirmed. Appellant subsequently filed a petition for allowance of appeal, and we granted review.

 In examining this matter, as with all summary judgment cases, we must view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. *Pennsylvania State University v. County of Centre*, 532 Pa. 142, 143–145, 615 A.2d 303, 304 (1992). In order to withstand a motion for summary judgment, a non-moving party "must adduce sufficient evidence on an issue essential to his case and on which he bears the burden of proof such that a jury could return a verdict in his favor. Failure to adduce this evidence establishes that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Ertrel v. Patriot–News Co.*, 544 Pa. 93, 101–102, 674 A.2d 1038, 1042 (1996). Finally, we stress that summary judgment will be granted only in those cases which are free and clear from doubt. *Marks v. Tasman*, 527 Pa. 132, 589 A.2d 205 (1991). Our scope of review in this matter is plenary. *See Phillips v. A–Best Products Co.*, 542 Pa. 124, 129–131, 665 A.2d 1167, 1170 (1995).

The lower courts here determined that the Superior Court's *Dodson* opinion mandated the entry of partial summary judgment in this matter. *Dodson* has also been cited as the controlling authority in numerous other lower court cases concerning noneconomic damages claims raised by limited tort electors. *See, e.g., Kelly v. Ziolko*, 705 A.2d 868 (Pa.Super.Ct.1997); *Walls v. Scheckler*, 700 A.2d 532 (Pa.Super.Ct.1997); *Leonelli v. McMullen*, 700 A.2d 525 (Pa.Super.Ct.1997). Because of the importance which *Dodson* holds in this case in particular, and in this area of the law in general, we believe that a thorough review of that opinion is appropriate at this juncture.

Michael Dodson ("Dodson"), a limited tort elector, was injured in an automobile accident. Dodson filed a complaint, requesting *inter alia* noneconomic damages. The defendant filed a summary judgment motion, alleging that Dodson's injuries were not serious. The *Dodson* trial court granted the defendant's motion for summary judgment, concluding that determinations regarding the seriousness of a limited tort elector's injuries must be made by trial courts at the earliest possible stage in the proceedings in order to effectuate the legislature's intent to lower insurance costs. The trial court further reasoned that if this issue were to be submitted

to a jury for resolution in all cases, the legislature's purpose for crafting Section 1705 would be thwarted. The trial court then reviewed the record and concluded that Appellant had not sustained a serious impairment of a body function.

Dodson appealed this determination to the Superior Court, which affirmed. The *Dodson* court agreed with the trial court that the legislature, in crafting Act 6, had intended to minimize insurance costs. The Superior Court declared that in order to stay true to the Legislature's intent, the trial judge must make the threshold determination of whether there has been a serious injury in all cases where the parties agree on the objective evidence relating to the nature and the extent of the injuries suffered by the plaintiff. *Dodson*, 665 A.2d at 1232–1233. The Superior Court in *Dodson* expressly rejected the position, espoused by our sister court in Michigan, that

> [t]he question of whether the plaintiff suffered a serious impairment of body function must be submitted to the trier of fact whenever the evidence would cause reasonable minds to differ as to the answer. This is true even where there is no material factual dispute as to the nature and extent of the plaintiff's injuries.

*Id.* at 1230 (quoting *DiFranco v. Pickard*, 427 Mich. 32, 398 N.W.2d 896, 900 (1986)). The *Dodson* court argued that to follow the *DiFranco* approach to this issue would "allow non-serious injury cases to proceed to a jury [and] would frustrate the legislature's goal of reducing litigation and the cost of insurance." *Id.* 665 A.2d at 1231.

Judge (now Justice) Saylor dissented vigorously in *Dodson*, asserting that summary judgment is appropriate only in the clearest of cases. He asserted that even if the parties were to agree on the objective medical evidence, they could still disagree on whether that evidence established that the plaintiff suffered a serious impairment of body function. *Id.* at 1237 (Saylor, J., dissenting). Judge Saylor believed that where the parties do disagree on this issue, such a determination should be left to the jury in all but the clearest of cases. *Id.*

The lower courts in the matter *sub judice* apparently credited the *Dodson* rationale that the legislature, via Act 6, dictated that in cases such as the matter *sub judice*, the threshold determination of whether a particular set of injuries constitutes a serious impairment of body function is to be made routinely by the trial court. Thus, in reviewing whether summary judgment was properly entered in this matter, we must first examine Act 6 to ascertain whether it does contain such a directive.

■ It is axiomatic that in construing statutory material, we first examine the language of the statute in question. If the language in question is unambiguous, we may not avoid its plain application under the pretext that we are remaining faithful to the legislature's intent. *See* 1 Pa.C.S. § 1921(b). Where the statute is ambiguous, however, we determine the intention of the General Assembly by considering, among other matters, the occasion and necessity of the statute and the contemporaneous legislative history. 1 Pa. C.S. § 1921(c). While statements made by legislators during the enactment process are not dispositive of legislative intent, they may be properly considered as part of the contemporaneous legislative history. *Commonwealth v. Wilson*, 529 Pa. 268, 275 n. 4, 602 A.2d 1290, 1294 n. 4 (1992).

The language at issue states that where an individual who has selected the limited tort option cannot establish that he has sustained a serious injury, then that individual "shall be precluded from maintaining an action for any noneconomic loss...." 75 Pa.C.S. § 1705(d). We do not see this language as an unambiguous directive that the trial judge, and not the jury, should make the threshold determination of whether the plaintiff has indeed suffered a serious impairment of a body function. Of course, the language cited does plainly restrict a limited tort elector's recovery to those situations where he can establish that he has sustained a serious injury. However, the statute is utterly silent as to which entity—the judge or the jury—is entrusted with making that threshold determination. Thus, as the plain language of the statute offers no directive on whether the judge or the jury should make

this decision, we must now ascertain the intent of the legislature in enacting the limited tort option.

When the legislature reexamined the MVFRL in the late 1980s, it was apparent that the cost of automobile insurance had been steadily increasing over the preceding years. One of the legislative purposes in enacting the limited tort option as part of Act 6 was to lower insurance premiums by reducing the number of small claims for pain and suffering; the intent was that by lowering insurance premiums, automobile owners who had been pushed out of the insurance market because of skyrocketing costs could once again obtain affordable motor vehicle insurance. *See Legislative Journal–House*, No. 11, February 7, 1990, pp. 202, 223.

While fashioning the limited tort option, the legislature spent a great deal of time balancing the rights of the limited tort elector to recover for noneconomic losses against the goal of lowering insurance costs. In striking such a balance, the legislature rejected attempts to insert language which would have made the question of whether a limited tort elector had suffered a serious injury one for the trial judge to determine rather than the jury. One such attempt was made by Senator Scanlon on December 11, 1989 when he introduced an amendment which would have altered the limited tort option so that it read that "[t]he determination of whether an injury constitutes a serious injury shall be a question of law and not a question of fact." Scanlon Amendment, A–4129, Printer's No. 2829. Senator Loeper immediately introduced his own amendment

nullifying the Scanlon Amendment; the Loeper Amendment passed by a wide margin. Loeper Amendment, No. A–4196. *See generally Legislative Journal–Senate*, No. 44, December 11, 1989, pp. 1430–1479.

Another attempt occurred when Representative Stephen Freind offered an amendment at the House–Senate Conference Committee Meeting which, like the Scanlon Amendment, would have made this threshold determination one for the judge to decide. 1990D00394, 00394DGS:AO 2/01/90 # 18. Representative Freind's amendment did not achieve a vote at the Committee meeting because he was unable to obtain a "second" on his motion to consider the amendment. Thus, both houses of the General Assembly considered making the issue of whether there had been a serious injury a purely legal determination which could be resolved only by the trial court, and specifically rejected placing such a requirement into Act 6.

We gain further insight into the question of whether the determination of serious impairment of a body function is to be left to the jury from the fact that the legislature modeled the threshold language of the limited tort option after similar language in Michigan's no-fault statute.[8] *See Legislative Journal–House*, No. 42, June 13, 1989, pp. 986–987. In drafting Act 6, our legislature was no doubt aware of *DiFranco, supra,* the case in which the Michigan Supreme Court held that the Michigan statute required that the threshold determination of whether the plaintiff had suffered a serious impairment of body function was to be left to the jury.[9]

---

**8.** The comparable Michigan statute states that:
[a] person remains subject to tort liability for noneconomic loss caused by his or her ownership, maintenance, or use of a motor vehicle only if the injured person has suffered death, serious impairment of body function, or permanent serious disfigurement.
Mich. Comp. Laws § 500.3135(1).

**9.** We note that the Michigan legislature recently amended § 500.3135 to provide that the issue of serious injury is one for the trial court judge to decide in either of the following situations: first, where there is no factual dispute concerning the nature and extent of the person's injuries; and second, where there is a factual dispute concerning the nature and extent of the person's injuries, but the dispute is not material to the determina-

tion of whether the person has suffered a serious impairment of body function or permanent serious disfigurement. *See* Mich. Comp. Laws § 500.3135(2) (amendment effective March 28, 1996).

The fact that the Michigan legislature has chosen to enact this amendment in 1996, however, is irrelevant in determining what our legislature intended when it created Pennsylvania's limited tort option in 1990. In ascertaining what our legislature intended when it used the Michigan law as a model in enacting Act 6, we must limit our examination to the state of the law as it existed then. In 1990, the Michigan statute upon which our limited tort option was based did not contain this language directing that the determination of "serious injury" was to be made, in

Upon review, we conclude that the legislative history does not support the view that the threshold determination of whether a serious injury has been sustained is to be made by the trial judge. In fact, we find that the legislature, by following the Michigan model, indicated that the traditional summary judgment standard was to be followed and that the threshold determination was not to be made routinely by a trial court judge in matters such as the one before us now, but rather was to be left to a jury unless reasonable minds could not differ on the issue of whether a serious injury had been sustained.[10]

Now that we have decided that the ultimate determination should be made by the jury in all but the clearest of cases, we turn to the question of what that determination consists. Act 6 does not provide any assistance to us in defining "serious impairment of a body function"; nor do we find any elucidation of the meaning of this term in the legislative history. We do, however, find that the *DiFranco* definition of "serious impairment of body function" is a sound one and hereby expressly adopt it. That definition states that:

The "serious impairment of body function" threshold contains two inquiries:

a) What body function, if any, was impaired because of injuries sustained in a motor vehicle accident?

b) Was the impairment of the body function serious? The focus of these inquiries is not on the injuries themselves, but on how the injuries affected a particular body function. Generally, medical testimony will be needed to establish the existence, extent, and permanency of the impairment.... In determining whether the impairment was serious, several factors should be considered: the extent of the impairment, the length of time the impairment lasted, the treatment required to correct the impairment, and any other relevant factors. An impairment need not be permanent to be serious.

*DiFranco*, 398 N.W.2d at 901.[11]

Now we must apply this standard to the matter *sub judice*. As noted *supra*, all inferences must be resolved in favor of Appellant as the non-moving party, and the matter must be submitted to a jury unless we can say reasonable minds could not differ on the conclusion that Appellant cannot recover on the evidence adduced. As to the first factor in the *DiFranco* test, it is the use of Appellant's right foot that has been impaired. The next question to be answered is whether this impairment of the use of Appellant's right foot was serious. The evidence, when viewed in the light most favorable to Appellant, shows that Appellant was immediately treat-

certain circumstances, by the trial judge. Furthermore, the *DiFranco* court interpreted the pre–1996 amendment as entrusting the determination of whether plaintiff had suffered a serious impairment of a body function to the jury.

We are, of course, fully cognizant of the possibility that our legislature could determine that the policy concerns which motivated the Michigan legislature to amend its statute are of equal concern in our Commonwealth and therefore Act 6 should be amended in a comparable fashion. Yet, amending a statute is a uniquely legislative function, one which would be improper for us to undertake. Therefore, we conclude that the recent amendments to the Michigan statute are not relevant to our resolution of this matter.

**10.** We note that the Superior Court in *Dodson* contended that the *DiFranco* court "abandoned a traditional summary judgment analysis." *Dodson*, 665 A.2d at 1230 The Superior Court apparently believed that *DiFranco* misapplied summary judgment law when it held that even where the parties agree on the nature and extent of

plaintiff's injuries, the case should still go to the jury where reasonable minds could differ over whether the facts established that the plaintiff had suffered a serious impairment of a body function.

Contrary to the Superior Court's assumption, the *DiFranco* court's decision is in accord with summary judgment law. Even where there is no dispute concerning the facts, a motion for summary judgment should not be granted where those facts can support conflicting inferences. 73 Am.Jur.2d *Summary Judgment* § 27. Where the facts can support conflicting inferences, it cannot be said that the case is free and clear from doubt and thus ripe for summary judgment. *See Marks, supra.*

**11.** We note that although the Superior Court in *Dodson* rejected the *DiFranco* court's approach on the issue of whether the judge or the jury should determine the threshold issue, it did adopt the *DiFranco* standard on what constitutes a "serious impairment of body function". *Dodson*, 665 A.2d at 1233–1234 n. 16.

ed in a hospital emergency room, where his injuries were diagnosed as consisting of contusions, sprains, and strains; he was discharged from the emergency room within a few hours. He missed four or five days of work at his full-time job, and missed approximately four of his weekly shifts at his part-time job. Approximately six months after the accident, one of Appellant's physicians stated that there appeared to be some type of joint arthritis or coalition in the right foot, and that Appellant might need to utilize orthotic heel lifts; his physician also injected one shot of cortisone. Finally, at his deposition approximately one year after the accident, Appellant indicated that although his foot caused him pain approximately every other week, he was still able to perform his work duties and, aside from having to utilize a riding mower, he was able to engage in his normal daily activities.

■ Even when this evidence is taken in the light most favorable to Appellant as the non-moving party, we find that reasonable minds could not differ on the conclusion that Appellant's injury was not serious. Appellant's injuries as diagnosed by the emergency room physician were mild and he was discharged after a few hours. Furthermore, he missed only four or five shifts at both his full-time and part-time jobs, where he was required to perform most of his work while on his feet. Also, the treatment for his injuries was not extensive. Finally, although some type of arthritis or coalition is affecting one of the joints in Appellant's right foot, the injury seems to have had little or no impact on Appellant's performance of his job functions and engagement in personal activities. Therefore, although the evidence, when taken in the light most favorable to Appellant, does show that he was injured in the accident, the impairment resulting from that injury is clearly *de minimis*.

Appellant, however, is of the opinion that he has adduced sufficient evidence of a seri-

ous impairment of body function so that the issue should go to a jury. In arguing this, Appellant focuses primarily on Dr. Bream's pronouncement that there was some type of arthritis or coalition in Appellant's right foot; apparently, Appellant assumes that this evidence alone is sufficient to bring the matter to a jury. Appellant seems to have misapprehended the nature of the inquiry here. The question to be answered is not whether Appellant has adduced sufficient evidence to show that Appellant suffered *any* injury; rather, the question is whether Appellant has shown that he has suffered a *serious* injury such that a body function has been seriously impaired. Clearly, it is insufficient for Appellant to show that there has been some injury—no matter how minor—in order to avoid the entry of summary judgment against him. Were we to fail to require Appellant to adduce evidence that not only was there an injury, but that it was also serious, before allowing him to present his case to the jury, we would make a mockery out of the summary judgment standard. Although Appellant has introduced evidence that there is some type of arthritis or coalition in his foot, he has failed to show that this injury has had such an impact on him so that it constitutes a serious injury. Therefore, we reject Appellant's argument.

For the foregoing reasons, we affirm the order of the Superior Court.[12]

FLAHERTY, C.J., files a concurring opinion which is joined by ZAPPALA and CASTILLE, JJ.

FLAHERTY, Chief Justice, concurring.

It is initially for the trial court, not the jury, to decide whether a plaintiff has suffered a "serious injury" which, for purposes of 75 Pa.C.S. § 1705(d), allows suit to be maintained for noneconomic damages, such as pain and suffering, where limited tort coverage has been elected under an auto

---

**12.** Appellant also briefly alludes to the argument that a limited tort elector's constitutional right to a jury trial will be denied if this court were to sanction the granting of summary judgment against a limited tort elector who has not shown that he has sustained a serious injury. This argument is specious. Neither the Pennsylvania

nor the United States Constitutions grant an absolute right to a jury trial in a civil action. Where a plaintiff has failed to establish that he has a cause of action, the constitutional right to a jury trial is not violated when that plaintiff's suit is dismissed.

insurance policy. Section 1705(d) states in pertinent part: "Unless the injury sustained is a serious injury, each person who is bound by the limited tort election shall be precluded from maintaining an action for any noneconomic loss ...." In cases where there is no genuine issue of fact as to the nature and extent of the plaintiff's injury, the question of whether the action can be maintained is one for the trial court. In providing the limited tort option, the legislature intended to reduce both litigation and the cost of insurance. To permit cases where plaintiffs claim serious injury to go to the jury without first having the court determine whether the injury is a serious one could prove as expensive as an unrestricted right to sue, and would not substantially rein in costs of insurance and litigation. Permitting the trial court to make the threshold determination as to the seriousness of an injury, where there is no issue of fact as to the nature and extent of the injury, much better serves the legislative goal.

The record in this case amply supports the trial court's conclusion that the injuries sustained by appellant were not severe enough to permit recovery of noneconomic damages. The summary judgment entered in favor of appellee was properly affirmed by Superior Court.

ZAPPALA and CASTILLE, JJ., join in this concurring opinion.

John W. Packel, L. Roy Zipris, Ellen T. Greenlee, Philadelphia, for James Hall.

Catherine Marshall, Lawrence J. Goode, Philadelhia, for Com.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.