## Tahos v. Marte

C.P. of Lehigh County, no. 98-C-1177.

*F. Paul Laubner* and *Andrew D. Hoffman,* for plaintiff.

*Basil A. Disipio* and *Laura L. Reed,* for defendant.

FORD, *J.,* July 8, 1999—Before the court is the motion for partial summary judgment of defendant, Jose G. Marte. In the motion, the defendant asks for summary judgment precluding the plaintiff from recovering non-economic damages in this motor vehicle accident case. The basis for the motion is the undisputed fact that the plaintiff selected the limited tort option for his automobile insurance coverage in effect at the time of the sub-

ject accident. We granted the motion by our order of June 30, 1999 and now explain the reasons.

The complaint was filed on May 20, 1998. Plaintiff's counsel immediately listed this case on the "arbitration track." The arbitration limit in Lehigh County is $50,000.

In the complaint, the plaintiff alleges that he was operating a motor vehicle in an easterly direction on Hamilton Street in Allentown near its intersection with St. Elmo Street. He was stopped in the left-hand lane of traffic as the car in front of him was waiting to make a left-hand turn. While the plaintiff was stopped, his car was struck in the rear by the car operated by the defendant.

As a result of the collision, the plaintiff was struck in the rear of the head by an unknown object. This caused his head to bleed but he did not immediately feel pain. He did not recall that his body struck any other part on the interior of the vehicle. The plaintiff was not wearing a seat belt at the time of the accident. (Plaintiff's December 4, 1998 deposition, pages 16-17. This deposition will hereafter be simply referred to as "N.T." followed by the cited page.)

At the urging of the police officer who responded to the scene, the plaintiff went to the hospital with the police officer. He was treated as an outpatient at the emergency room. His head wound was treated. He was told that he had a slight concussion and he was released. (N.T., 19-21.) The head injury resolved completely after a few days. (N.T., 26.)

The plaintiff also alleges that he suffered pain in the middle of his low back but, at his deposition, he did not provide detail as to that alleged injury. (N.T., 27.) At the point that the plaintiff was asked to describe what inju-

ries remained from the accident as of the date of his deposition, which was almost 10 months after the accident, the plaintiff made no mention of the low back injury. (N.T., 30-31.) A fair inference from the testimony is that the low back injury resolved itself at some point between February and December of 1998.

The one other injury identified by the plaintiff was pain and loss of strength in his left arm and shoulder. That particular injury was described by him as causing pain, aches and loss of strength. The loss of strength caused him to drop items at work for some period of time after the accident. The pain and aches were particularly troublesome for approximately three or four months after the accident. Following that, the plaintiff has had good days and bad days but, by mid-summer of 1998, the plaintiff "started feeling pretty good." (N.T., 23, 26, 27-28.) He stopped dropping things approximately one and one-half to two months after the accident. (N.T., 34.) His shoulder has improved a lot. (N.T., 34.)

As of the date of the plaintiff's deposition, the only lingering problem for the plaintiff was his shoulder. (N.T., 34.) With pressure, he feels pain and a loss of strength in the left shoulder if he is attempting to work overhead.

The plaintiff's medical treatment consisted of the outpatient treatment at the hospital which we have already mentioned, visits to a chiropractor, Dr. Ziegler, commencing approximately two to three weeks after the accident until the latter part of the summer of 1998, and an examination by an unspecified doctor. (N.T., 30.) Since the examination by the unidentified doctor, there has been no further medical treatment by the plaintiff.

The plaintiff has not missed any time from work. In fact, he returned to work the day following the accident.

He was never given restrictions by the chiropractor for the work that he performed. (N.T., 31.) The plaintiff has changed jobs from working as a cook at one restaurant where he worked full-time to working approximately 20-30 hours per week at another restaurant since the date of the accident. The change in jobs had nothing to do with the accident. The change was made because of better working hours at the latter job and because of the plaintiff's desire to return to school, which the plaintiff has done.

The plaintiff is able to perform his current occupation without difficulty, except with long days and weather changes and when attempting to work overhead as indicated. (N.T., 30, 33.)

The only restrictions in the plaintiff's daily activities that he noted are that he has significantly curtailed his weight training and "workouts." However, he did resume these, on a limited basis, several months after the accident. He used to "spar" but he has not tried that since the accident.

The plaintiff admitted he made the limited tort selection for coverage in this case. (N.T., 41.)

Pennsylvania Rule of Civil Procedure 1035.2(1) provides that summary judgment is proper "whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report. . . ." An adverse party may not rest merely upon the allegations or denials in the pleadings, but must file a response within 30 days after service of the motion for summary judgment. Pa.R.C.P. 1035.3(a). To withstand the entry of summary judgment, in the response, an adverse party must identify "one or more issues of fact arising from

evidence in the record controverting the evidence cited in support of the [summary judgment] motion." Pa.R.C.P. 1035.3(a)(1).

Pursuant to 75 Pa.C.S. §1705(d), an insured, like the plaintiff, who opts for limited tort coverage is precluded from recovering noneconomic loss unless the insured is able to show that a serious injury was suffered.

The Pennsylvania Supreme Court addressed the issue of the limited tort threshold in *Washington v. Baxter,* 553 Pa. 434, 719 A.2d 733 (1998). The court stated that the ultimate decision of whether a plaintiff sustained a "serious injury" should be made by a jury in "all but the clearest of cases." *Id.,* 553 Pa. at 446, 719 A.2d at 740. After our careful review of the record in this case, which includes the deposition testimony of the plaintiff, placed before the court by the parties for decision on this issue, we find that this is a clear case whereby, as a matter of law, we are compelled to conclude that the plaintiff did not suffer a serious injury.

A serious injury has been defined as "[a] personal injury resulting in death, serious impairment of body function or permanent serious disfigurement." 75 Pa.C.S. §1702. Mr. Tahos did not suffer death nor did he suffer a permanent serious disfigurement. Accordingly, the parties restricted their arguments to whether the plaintiff suffered serious impairment of body function.

The determination of whether serious impairment of body function has been suffered requires us to make two inquiries. First, "[w]hat body function, if any, was impaired because of injuries sustained in a motor vehicle accident?" *Washington,* 553 Pa. at 449, 719 A.2d at 740, quoting *DiFranco v. Pickard,* 398 N.W.2d 896, 901 (1986). Second, "[w]as the impairment of the body func-

tion serious?" *Id.* When deciding these questions, the court should not focus on the injuries themselves, but should focus on how the injuries affected a particular body function. *Id.* Several factors should be considered when deciding whether an injury is serious, namely, the extent of the impairment, the length of time the impairment lasted, the treatment required to correct the impairment, and any other relevant factors. *Id.*

The parties do not dispute that the laceration on the back of the head and the back stiffness suffered by the plaintiff were not serious injuries. We therefore focus on the injury to the left arm and shoulder which ultimately resolved itself into a shoulder injury only.

In assessing the arm and shoulder injury, we do not focus on any one factor. In fact, no one factor is determinative. Rather, we have considered the entirety of the plaintiff's testimony in assessing the shoulder injury.

In assessing the evidence in the light most favorable to the plaintiff, we determine that the injuries have been bothersome for the plaintiff, particularly in the months immediately following the accident. As of the time of the deposition, however, pain and discomfort were not ever present but were only present upon the application of pressure to the shoulder. A fair reading of the plaintiff's deposition as to what he means by "pressure" equates to the attempt to lift, particularly overhead. On many occasions the pain and discomfort are not present.

The plaintiff has never been incapacitated from work as a result of the accident. In fact, his chiropractor placed no restrictions upon his work. Other than some initial problems with dropping items and difficulty in lifting things overhead, the plaintiff has not been impaired in his ability to perform his work.

As to the plaintiff's leisure activities, there was some disruption in the leisure activities for several months after the accident in weight training and "working out." The plaintiff has gradually reintroduced himself to the activities, perhaps not to the extent that he previously did them. The testimony is not that the plaintiff is restricted from doing "sparring," but that he has not attempted to do that.

The facts from *Washington* are instructive. The plaintiff there suffered contusions, sprains and strains. He missed four to five days of work. Six months following Mr. Washington's motor vehicle accident, he was diagnosed with joint arthritis and coalition in the right foot requiring him to wear heel lifts. His foot caused him pain every other week. He was still able to perform his work duties. He was able to engage in normal daily activities except for having to use a riding lawn mower. The injuries suffered by Mr. Washington and the injuries suffered by the plaintiff here are truly comparable. In *Washington,* the Supreme Court ruled that summary judgment was appropriate. We do the same with this case.