## Scavetti-Celano v. Milillo

C.P. of Philadelphia County, January Term 2004, no. 0731.

*Marc T. Sacchetta,* for plaintiff.
*Austin R. Gray,* for defendants Louden, Louden and Milillo.

QUIÑONES ALEJANDRO, *J.,* July 13, 2005—

## INTRODUCTION

The instant appeal involves allegations that the undersigned trial judge erred and/or abused [her] discretion when determining that Vanessa Scavetti-Celano (plaintiff) was subject to the "limited tort" option provisions of the Motor Vehicle Financial Responsibility Law (MVFRL or Motor Vehicle Code), 75 Pa.C.S. §1705 et seq. This trial judge disagrees.

## RELEVANT FACTUAL AND PROCEDURAL HISTORY

Plaintiff's civil action complaint for personal injuries against Lisa M. Milillo (defendant), Ron Louden and Ron Alan Louden (same person, defendant Louden), and Valerie Elaine Monroe for negligent entrustment of a motor vehicle.[1] On January 20, 2005, a default judgment was entered against defendant Monroe as a result of her failure to file an answer to the complaint. Discovery ensued and was completed. On March 2, 2005, a jury trial commenced against the remaining defendants. Briefly, the relevant evidence the jury considered is as follows:

---

1. At the commencement of the trial, the caption was amended with leave of the court to reflect the parties as plaintiff, and defendants Louden and Monroe.

"On January 8, 2002,[2] plaintiff was a 29-year-old female[3] employed as a supervisor in the digitizing department at Main Line Embroidery,[4] an entity she had worked with for 14 years.[5] On that date, she received a phone call at her place of employment from the police notifying her that the alarm system at her mother's house had been triggered.[6] Plaintiff asked a co-worker, defendant Monroe, to drive her from their Essington, Pennsylvania,[7] work location to check on her mother's home located in Philadelphia, Pennsylvania.[8] Defendant Monroe agreed and they were headed in a southward direction on 4th Street[9] in Tinicum Township,[10] with plaintiff as an unrestrained[11] front seat passenger,[12] when the motor vehicle accident occurred.

"Defendant Louden was driving a vehicle he and his wife, defendant Milillo, owned, on his way to a truck driving school located in Lester, Pennsylvania.[13] Moments prior to the motor vehicle accident, defendant Louden came to a rolling stop[14] before making a left hand turn onto Seminole Street, the cross street to 4th Street[15] (which does not have any stop signs for vehicles

---

2. March 2, 2005, trial transcript at 58: 14.
3. *Id.* at 104: 16.
4. *Id.* at 58: 5-11.
5. *Id.* at 58: 7.
6. *Id.* at 67: 15-20.
7. *Id.* at 59: 19.
8. *Id.* at 59: 2-4, 14-16.
9. *Id.* at 60: 11.
10. *Id.* at 46: 12-13.
11. *Id.* at 104: 16-18.
12. *Id.* at 60: 2, 7-8.
13. *Id.* at 122: 5-8; 121: 15.
14. *Id.* at 124: 11-14.
15. *Id.* at 124: 18-22.

going north and south).[16] As he entered 4th Street, defendant Louden's vehicle was traveling at approximately 10 miles per hour,[17] while defendant Monroe's approaching vehicle was traveling at a speed between 25 and 45 miles per hour.[18] Defendant Louden had almost completed the turn onto 4th Street when the accident occurred. The collision impact was to the front passenger side of defendant Monroe's Mazda 626[19] causing the airbags to deploy,[20] and to the right rear quarter panel of defendant Louden's Suzuki Side Kick.[21] The force of the collision broke the axle of defendant Louden's vehicle, making it inoperable.[22]

"Although an ambulance arrived at the scene of the accident, plaintiff refused immediate medical care.[23] Later that evening, she went to the emergency room at Thomas Jefferson University Hospital where her entire body was x-rayed and she was later discharged.[24]

"Approximately two weeks after the accident,[25] plaintiff sought the services of a chiropractor. She underwent

---

16. *Id.* at 124: 18-22.

17. *Id.* at 134: 6-9.

18. *Id.* at 61: 10; 104: 16-18; 88: 11-13. There is inconsistent evidence regarding the speed of defendant Monroe's vehicle. Plaintiff testified the speed of the vehicle was 25 miles per hour. However, the emergency room medical records indicate that plaintiff stated that the speed was 30 miles per hour, while the Emergency Department nursing record reflects the speed of the vehicle to be 45 miles per hour.

19. *Id.* at 59: 7.

20. *Id.* at 63: 7-21; 64: 24-25.

21. *Id.* at 124: 23; 127: 4-6.

22. *Id.* at 125: 18-20.

23. *Id.* at 67: 11-13.

24. *Id.* at 68: 5-11; 68: 18-20.

25. *Id.* at 69: 3-8.

a MRI,[26] which was positive for a herniated disk or protrusion.[27] Plaintiff received treatment from the chiropractor until her medical benefits were exhausted, then ceased treatment because she could not financially afford the therapy.[28] She was advised by her chiropractor to take up Pilates, but failed to do so.[29] Approximately two to three months after the accident,[30] her neck pains subsided, but her back pain allegedly did not.[31] She used Aspercream on her back and took non-prescription pain medication.[32]

"Before the accident, plaintiff claims that she did not suffer from any type of neck or back pain.[33] She was able to exercise, run, and do sit-ups, household chores and other physical activities without any pain.[34] Plaintiff claims, however, that since the accident, she continues to suffer from constant back pain;[35] that she cannot sit or stand for extended periods of time;[36] and that her ability to engage in physical activities has diminished.[37] Other than the chiropractic treatments, plaintiff did not

---

26. *Id.* at 72: 11.
27. *Id.* at 73: 19-20.
28. *Id.* at 95: 4-5; 95: 11-15.
29. *Id.* at 107: 17-22; 108: 5-9.
30. *Id.* at 71: 10-14.
31. *Id.* at 72: 6-7.
32. *Id.* at 92: 13-25.
33. *Id.* at 76: 2-5.
34. *Id.* at 76: 13-16.
35. *Id.* at 74: 24-25.
36. *Id.* at 76: 20-25.
37. *Id.* at 77: 12-17. Plaintiff can walk a little bit on the treadmill but is not able to exercise as she used to before the accident. Household chores, such as vacuuming, hurt her back, and she cannot pick up her newborn baby without feeling back pain.

seek any medical treatment for her accident-related injuries.[38]

"As a result of the motor vehicle accident, plaintiff did not miss any work nor did her job responsibilities require any accommodations for her injuries.[39] Plaintiff did not suffer any lost wages.[40] She has since married, had a child, and now manages a moving company with her husband.[41] Her current responsibilities consist of secretarial and administrative duties." [42]

On March 8, 2005, the jury rendered a verdict finding that defendant Louden was negligent but that his negligence was not a factual cause in bringing about plaintiff's injuries. The jury also found that plaintiff did not sustain a "serious injury."

On March 14, 2005, plaintiff filed a post-trial motion requesting a new trial. Oral argument was scheduled and heard on April 26 and April 27, 2005. By order dated April 27, 2005, this trial judge denied plaintiff's post-trial motion.

Dissatisfied, on May 4, 2005, plaintiff filed the instant appeal.

## ISSUE

In response to an order issued in accordance with Pennsylvania Rule of Appellate Procedure 1925(b), plaintiff, on June 3, 2005, served unto this trial judge a concise statement of matters complained of on appeal and ar-

---

38. *Id.* at 101: 14-16.
39. March 2, 2005, trial transcript 91: 20-21.
40. *Id.* at 92: 3-11.
41. *Id.* at 57: 4-20.
42. *Id.* at 19-20.

gued that: "this honorable court committed an error of law and/or abuse of discretion in ruling that plaintiffs [sic] case was governed by 'limited tort.' Plaintiff's counsel preserved this issue by objecting to the court's ruling prior to the selection of the jury. Plaintiff also preserved this issue by objecting on the record outside the presence of the jury during the charging conference to a limited tort charge, and plaintiff again preserved this objection on the record at the sidebar conference immediately after the courts [sic] charge to the jury."

## LAW AND DISCUSSION

For the reasons that follow, this trial judge opines that the denial of plaintiff's post-trial motion was proper and that this appeal is without merit.

At the outset, it is important to mention that, although the jury found defendant Louden negligent, they also found that defendant Louden's negligence was not a factual cause in bringing about plaintiff's injuries, and that plaintiff did not suffer a "serious injury." Because this trial judge determined that the "limited tort" option of the MVFRL applied, the jury did not consider what damages, if any, plaintiff suffered. This judicial determination is the basis of plaintiff's appeal and request for a new trial.

It is undisputed that the decision to grant and/or deny a request for a new trial lies within the sound discretion of the trial court. *Andrews v. Jackson,* 800 A.2d 959, 962 (Pa. Super. 2002), *appeal denied,* 572 Pa. 694, 813 A.2d 835 (2002). An appellate court may not disturb a trial court's ruling unless the trial court palpably abused its discretion and/or committed an error of law. *Neison v. Hines,* 539 Pa. 516, 521, 653 A.2d 634, 636 (1995);

*Andrews,* 800 A.2d at 961. An abuse of discretion is not merely an error of judgment. If, in reaching a conclusion, the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence of record, discretion is abused. See *Fanning v. Davne,* 795 A.2d 388, 393 (Pa. Super. 2002), citing *Paden v. Baker Concrete Construction Co. Inc.,* 540 Pa. 409, 412, 658 A.2d 341, 343 (1995). However, an abuse of discretion may not be found merely because the appellate court might have reached a different conclusion. The court's action requires a showing of manifest unreasonableness, or partiality, prejudice, bias, or ill will, or such lack of support as to be clearly erroneous. *Fanning,* 795 A.2d at 393.

A new trial is warranted where the jury's verdict is so contrary to the evidence as to shock one's sense of justice. *Neison,* 539 Pa. at 521, 653 A.2d at 636. However, a new trial should not be granted because of a mere conflict in testimony or some irregularity which occurred during trial or because the trial judge, on the same facts, would have arrived at a different conclusion. *Harman ex rel. Harman v. Borah,* 562 Pa. 455, 468, 756 A.2d 1116, 1122 (2000), *appeal denied,* 567 Pa. 762, 790 A.2d 1017 (2001). The moving party must demonstrate to the trial court that he or she has suffered prejudice from the mistake. *Id.* at 468, 756 A.2d at 1122.

Here, the pertinent statute is the Motor Vehicle Code. Generally, under the provisions of this code, insurance companies must present their insureds with an opportunity to choose between the "full tort" option and the "limited tort" option. 75 Pa.C.S. §1705(a)(1). For a higher yearly premium, the "full tort" option allows individu-

als an opportunity to seek financial compensation for all medical and out-of-pocket expenses, as well as noneconomic loss, which is defined as pain and suffering and other non-monetary damages suffered as a result of a motor vehicle accident. 75 Pa.C.S. §1705(a) (1)(B) (2004); 75 Pa.C.S. §1702(2)(ii) (2004).

In contrast, the "limited tort" option restricts damage recovery to only medical and out-of-pocket expenses unless the injuries fall within the "serious injury" definition. 75 Pa.C.S. §1705(a)(1)(A) (2004). An insured who affirmatively chooses the "limited tort" option and who has not sustained a "serious injury" is precluded from recovering noneconomic damages. *Berger v. Rinaldi,* 438 Pa. Super. 78, 84, 651 A.2d 553, 556 (1994), *appeal denied,* 544 Pa. 641, 664 A.2d 971 (1995).

A *serious injury* is defined as "a personal injury resulting in death, serious impairment of body function, or permanent serious disfigurement." See 75 Pa.C.S. §1702. To meet a "serious impairment of body function" threshold requires answering two inquiries: (a) what body function, if any, was impaired because of the injuries sustained in a motor vehicle accident and (b) was the impairment of the body function serious? *Washington v. Baxter,* 553 Pa. 434, 447, 719 A.2d 733, 740 (1998). These inquiries are not on the injuries themselves, but rather, on the effect the injuries had on a particular body function. *Id.* Factors that should be taken into consideration when determining whether an injury is serious include the extent of the impairment, the length of time the impairment lasted, the treatment required to correct the impairment, and any other relevant factors. *Id.* Except in the clearest of cases, the determination of whether "serious injury" exists should be made by the jury. *Id.*

Here, prior to the commencement of the jury trial, this trial judge heard argument on whether this matter was governed by the provisions of full tort or limited tort. Plaintiff argued that this case should not be governed by "limited tort" provisions of the MVFRL because the declaration page of her Farmers New Century Insurance Contract dated December 10, 2001, indicated in the "Coverages" section that the coverage was for a "full tort" plan, that she had not signed any waiver form, and that the total amount of the annual premium paid supported her contention that she had selected the "full tort" option. Defendants' counsel, however, provided this trial judge with a waiver form dated April 19, 2001, signed by plaintiff's mother. In response, plaintiff argued that the waiver form that her mother signed which selected the "limited tort" insurance option was done without her knowledge for a totally different insurance policy, as evidenced by the different policy numbers. In their response, defendants argued that the different numbers were due to a clerical error and that plaintiff had previously admitted at a trial deposition that she and her mother owned only one insurance policy, which is the one that contained the signed waiver and the sign-down form indicating the limited tort selection.

This trial judge is aware that section 1705(a)(2) of the Motor Vehicle Code provides: "Where there are two or more named insureds on a policy, any named insured may make the full or limited tort election provided for in this section for all named insureds on the policy."

In addition to considering the arguments made, this trial judge carefully reviewed the waiver page and the amount of the annual premiums due, depending on the selection of either the full tort option or limited tort option. From these documents, it appeared that the basic

annual premium paid for the coverage selected was consistent with the premiums due for the "limited tort" coverage, discounted. The amount plaintiff or her mother paid for the insurance premiums did not surpass the amount due for limited tort coverage, and was not near the amount due for full tort coverage. Despite plaintiff's professed lack of knowledge that her mother signed the waiver form for the policy, this trial judge is convinced that a valid waiver had been signed by plaintiff's mother and, consequently, that the "limited tort" option provisions of the MVFRL govern the instant case. The "limited tort" option chosen by plaintiff's mother binds any and all insureds on that policy, including plaintiff. This trial judge was not persuaded by plaintiff's argument that a valid waiver did not exist or that the waiver form was for a different insurance policy. Her argument, at times contradictory and inaccurate, was not convincing. In this trial judge's opinion, plaintiff has failed to support her appellate claim that an error of law and/or an abuse of discretion occurred when this trial judge determined that the "limited tort" provisions applied in this case.

## CONCLUSION

Based on the foregoing discussion, statutes, rules, and case law, this trial judge is of the opinion that no error of law and/or abuse of discretion occurred in ruling that plaintiff's case was governed by "limited tort" provisions of the Motor Vehicle Code and/or in denying plaintiff's post-trial motion for a new trial. This trial judge respectfully requests that plaintiff's appeal be dismissed and that the order dated April 29, 2005, be affirmed.