Romeris CADENA, Appellant

v.

James P. LATCH, Appellee.

Superior Court of Pennsylvania.

Argued Aug. 21, 2013.

Filed Oct. 4, 2013.

Casey O. Srogoncik, Philadelphia, for appellant.

Danielle Wesley, Philadelphia, for appellee.

BEFORE: GANTMAN, J., ALLEN, J., and MUNDY, J.

OPINION BY MUNDY, J.:

Appellant, Romeris Cadena, appeals from the October 1, 2012 order granting the motion for summary judgment filed by Appellee, James P. Latch, and dismissing all of Appellant's claims with prejudice. After careful review, we reverse and remand for further proceedings.

The trial court summarized the relevant facts and procedural history of this case as follows.

[Appellant] filed a complaint for non-economic damages for injuries sustained in a motor vehicle accident on October 18, 2007. [Appellee] rear-ended [Appellant]'s vehicle while she was in motion. [Appellant] alleged in the complaint that she suffered injuries, including but not limited to, disc injuries, and/or exacerbation thereof, nerve damages, cervical sprain and strain, cervical radiculitis, and lumbar radiculitis. Although she

complained about pain in her shoulder and chest, [Appellant] initially refused emergency treatment at the accident site. She believed that she did not feel hurt enough to call an ambulance; instead, she went home to bed. She went to the hospital the next day because she was not feeling any better. She was told to do the same things that she was told to do the day before and was sent home again. [Appellant] is an accountant and missed approximately one week of work. She is not seeking either a work loss claim or a claim for unpaid medical expenses.

In her deposition, [Appellant] testified that she never had any back pain, neck pain, left eye pain or shoulder problems before her accident; however, she suffered from these problems at various times after the accident. [Appellant] was in two prior accidents before the instant one. She skidded off the road and hit a tree in one accident and went off the road and got stuck in mud in another accident.

Prior to the accident, [Appellant] did not have a primary care physician. On October 20, 2007, she went to a doctor in Lebanon, Pennsylvania, who sent her to a Lebanon hospital for tests because her pain had increased. That hospital diagnosed her with cervical strain and a headache, told her to continue her pain medication, and prescribed bed rest for three days.

On November 29, 2007, [Appellant] went to an orthopedic doctor for left-sided head pain, eye pain, visual dysfunction, left shoulder pain, neck pain, headaches, sensitivity to bright lights during headaches, lower back pain, numbness, and tingling in the left arm. This doctor diagnosed her with cervical and lumbrosacral sprain and strain; cervical radiculitis, lumbar radiculitis, left shoulder contusion and impingement syndrome, and post-traumatic headaches. [Appellant] treated with him on five occasions, including her July 10, 2008 discharge. During that period [Appellant] went to ten physical therapy visits from November 27, 2007, through March 18, 2008. On discharge, the diagnosis was cervical radiculitis, lumbar radiculitis, bilateral C5 radiculopathy, left-sided C6 radiculopathy, L4–L5 radiculopathy, cervical sprain and strain, lumbrosacral sprain and strain, lumbar disc bulging, DJD, and multilevel lumbar HNP. Since her discharge from this doctor, [Appellant] has not sought additional treatment from him or any other doctor.

A cervical spine MRI study was performed on December 12, 2007, [and] revealed mild degenerative changes at C4–C5, C5–C6, and C6–C7. No traumatic injury was noted. A lumbar spine MRI study revealed a disc bulge and degenerative changes at 1–3–1–4, degenerative change with disc bulge and superimposed left paracentral herniation at 1–4–1–5, and likely impingement of the left L5 nerve roots in the lateral recess. No traumatic injury was noted.

A lower extremity EMG on December 18, 2007 was consistent with a left L5 radiculopathy. An upper extremity EMG study on May 16, 2008 was consistent with a bilateral C5 and left C6 radiculopathy, three months or older.

[Appellant] never refilled her pain medication. [Appellant] has no doctor appointments scheduled in the future. At her deposition on June 23, 2010, [Appellant] testified that her pain and headaches had decreased and her eyesight had improved. She took Motrin as needed for her shoulder pain. She gained approximately fifty pounds after the accident due to lack of activity and was depressed about the weight gain.

She was uncomfortable standing so she missed some of her children's music presentations. A daughter went to live with her father because she was bored living with [Appellant] due to her lack of activity; however, [Appellant] went on vacations. [Appellant] was not as sexually active after the accident as she was before. She also did not drive as much in order to avoid possible pain.

[Appellant] had an independent medical examination in June 2011. This examination concludes that [Appellant] sustained a sprain of the facet joints of the cervical spine and lumbrosacral spine, as well as a strain of the para vertebral musculature involving the lumbar spine and cervical spine as a result of the accident. This report also states that [Appellant] had pre-existing degenerative changes in the cervical spine and lumbar spine, both involving the discs and facet joint. No permanent injuries were noted. The report concludes that [Appellant] has recovered from these injuries.

Trial Court Opinion, 2/8/13, at 1–4.

On September 11, 2009, Appellant began this action by filing a civil complaint alleging negligence. On October 22, 2009, Appellee filed preliminary objections to Appellant's complaint in the form of a motion to strike. The trial court entered an order sustaining Appellee's preliminary objections on January 8, 2010, which struck paragraphs 6(h) and 6(j) from Appellant's complaint. The parties entered into a stipulation to dismiss Appellee's wife, Delores Latch, from the action on January 26, 2010. After discovery, on January 30, 2012, Appellee filed a motion for summary judgment. After both parties briefed their respective positions, the trial court held oral argument on the motion on September 4, 2012. On October 1, 2012, the trial court entered an order granting Appellee's motion for summary judgment and dismissing all claims against Appellee with prejudice. On October 23, 2012, Appellant filed a timely notice of appeal.[1]

On appeal, Appellant raises three issues for our review.

I. Did [Appellee] meet his burden to prove that [Appellant] knowingly and intelligently waived full tort coverage by submitting only a certificate of coverage and relying upon an interrogatory that asked [Appellant] to make a legal conclusion?

II. Did the trial court err in awarding summary judgment to [Appellee] on the issue of whether [Appellant] sustained a serious injury where Pennsylvania law states that this is a jury question and [Appellant] submitted ample evidence that her injuries significantly limited almost every aspect of her daily life?

III. Did the trial court err in dismissing all of [Appellant]'s claims on the ground that she did not sustain a serious injury when only [Appellant]'s non-economic claims are barred?

Appellant's Brief at 2.

We begin by noting our well-settled standard of review. "[O]ur standard of review of an order granting summary judgment requires us to determine whether the trial court abused its discretion or committed an error of law[,] and our scope of review is plenary." *Petrina v. Allied Glove Corp.*, 46 A.3d 795, 797–798 (Pa.Super.2012) (citations omitted). "We view the record in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving

---

1. Appellant and the trial court have complied with Pa.R.A.P. 1925.

party." *Barnes v. Keller,* 62 A.3d 382, 385 (Pa.Super.2012), *citing Erie Ins. Exch. v. Larrimore,* 987 A.2d 732, 736 (Pa.Super.2009) (citation omitted). "Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered." *Id.* The rule governing summary judgment has been codified at Pennsylvania Rule of Civil Procedure 1035.2, which states as follows.

### Rule 1035.2. Motion

After the relevant pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for summary judgment in whole or in part as a matter of law

> (1) whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report, or

> (2) if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury.

Pa.R.C.P. 1035.2.

"Where the non-moving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment." *Babb v. Ctr. Cmty. Hosp.,* 47 A.3d 1214, 1223 (Pa.Super.2012) (citations omitted), *appeal denied,* 65 A.3d 412 (Pa.2013). Further, "failure of a non-moving party to adduce sufficient evidence on an issue essential to his case and on which he bears the burden of proof establishes the entitle-

ment of the moving party to judgment as a matter of law." *Id.*

Thus, our responsibility as an appellate court is to determine whether the record either establishes that the material facts are undisputed or contains insufficient evidence of facts to make out a prima facie cause of action, such that there is no issue to be decided by the fact-finder. If there is evidence that would allow a fact-finder to render a verdict in favor of the non-moving party, then summary judgment should be denied.

*Id., citing Reeser v. NGK N. Am., Inc.,* 14 A.3d 896, 898 (Pa.Super.2011), *quoting Jones v. Levin,* 940 A.2d 451, 452–454 (Pa.Super.2007) (internal citations omitted).

We elect to first address Appellant's second issue, because we find it dispositive. Appellant argues that assuming, *arguendo,* that she did knowingly and intelligently waive full tort coverage, the trial court nevertheless erred in granting Appellee's motion for summary judgment because she suffered a serious injury. Appellant's Brief at 11. A plaintiff's suffering a "serious injury" is an exception to a waiver of full tort coverage.

### § 1705. Election of tort options

. . .

(d) **Limited tort alternative.**—Each person who elects the limited tort alternative remains eligible to seek compensation for economic loss sustained in a motor vehicle accident as the consequence of the fault of another person pursuant to applicable tort law. **Unless the injury sustained is a serious injury,** each person who is bound by the limited tort election shall be precluded from maintaining an action for any non-economic loss, except that:

(1) An individual otherwise bound by the limited tort election who sustains damages in a motor vehicle accident as

the consequence of the fault of another person may recover damages as if the individual damaged had elected the full tort alternative whenever the person at fault:

(i) is convicted or accepts Accelerated Rehabilitative Disposition (ARD) for driving under the influence of alcohol or a controlled substance in that accident;

(ii) is operating a motor vehicle registered in another state;

(iii) intends to injure himself or another person, provided that an individual does not intentionally injure himself or another person merely because his act or failure to act is intentional or done with his realization that it creates a grave risk of causing injury or the act or omission causing the injury is for the purpose of averting bodily harm to himself or another person; or

(iv) has not maintained financial responsibility as required by this chapter, provided that nothing in this paragraph shall affect the limitation of section 1731(d)(2) (relating to availability, scope and amount of coverage).

. . .

75 Pa.C.S.A. § 1705(d) (emphasis added).

The Motor Vehicle Code defines "serious injury" as "[a] personal injury resulting in death, serious impairment of body function or permanent serious disfigurement." *Id.* § 1702. Our Supreme Court has held that in determining whether a motorist has suffered a serious injury, "the threshold determination was not to be made routinely by a trial court judge . . . but rather was to be left to a jury unless reasonable minds could not differ on the issue of whether a serious injury had been sustained." *Washington v. Baxter,* 553 Pa. 434, 719 A.2d 733, 740 (1998). In

conducting this inquiry, "[s]everal factors must be considered to determine if the claimed injury is 'serious': '[1] the extent of the impairment, [2] the length of time the impairment lasted, [3] the treatment required to correct the impairment, and [4] any other relevant factors.'" *Graham v. Campo,* 990 A.2d 9, 16 (Pa.Super.2010), *appeal denied,* 609 Pa. 703, 16 A.3d 504 (2011). Our Supreme Court has cautioned that "[t]he focus of these inquiries is not on the injuries themselves, but on how the injuries affected a particular body function." *Washington, supra.* We remain cognizant of the principle that "[a]n impairment need not be permanent to be serious[ ]" under section 1705(d). *Robinson v. Upole,* 750 A.2d 339, 342 (Pa.Super.2000) (citation omitted).

In this case, Appellant sought the treatment from Dr. Steven Allon, an orthopedic surgeon. On December 11, 2008, Dr. Allon authored a report in which he diagnosed Appellant as having cervical radiculitis, lumbar, radiculitis, bilateral C5 radiculopathy, left-sided C6 radiculopathy, L4–L5 radiculopathy, cervical sprain and strain, lumbrosacral sprain and strain, lumbar disc bulging, DJD, and multilevel lumbar HNP. Letter of Dr. Steven Allon, 12/11/08, at 2–3. Dr. Allon further concluded to a reasonable degree of medical certainty that "[i]n [his] opinion, all of [these] signs and symptoms were a direct result of the injury she sustained as a result of the accident on 10/18/07." *Id.* at 3. Additionally, Dr. Allon stated in his report that "there [was] no doubt in [his] mind that the . . . described diagnostic impressions have had a negative impact on all of [Appellant]'s activities of daily living, whether work related or non-work related." *Id.*

In her deposition, Appellant described how the pain caused by the accident has affected her life.

[Defense Counsel]: What pain are we talking about?

[Appellant]: My back, my neck. Especially the left side. It's more towards the left side.

[Defense Counsel]: Let's talk about— let's just go back a little bit. Let's talk about, when you go to Dr. Allon, how are you feeling? On a scale of one to ten, what is your pain like?

[Appellant]: The pain was an eight. It was always there, an eight. The therapy helped.

. . .

[Defense Counsel]: When you talk about your pain being an eight out of ten, what specifically is hurting when you go to Dr. Allon?

[Appellant]: My back, my neck, my legs.

. . .

[Defense Counsel]: Back, neck, left leg. What else?

[Appellant]: Left arm

[Defense Counsel]: Anything else?

[Appellant]: Head.

[Defense Counsel]: The head is still hurting?

[Appellant]: Yes.

[Defense Counsel]: And the head has been hurting since the accident. What kind of head pain? Is it a headache? What kind of head pain are you having?

[Appellant]: Headache.

[Defense Counsel]: Every day?

[Appellant]: Not every day, no.

. . .

[Defense Counsel]: In terms of your back pain, what kind of back pain are you experiencing when you're there? Is it like a stinging or a burning?

[Appellant]: Burning.

[Defense Counsel]: What about your neck?

[Appellant]: The same.

[Defense Counsel]: What's going on in your leg?

[Appellant]: They get numb a lot.

[Defense Counsel]: And your arm?

[Appellant]: The same.

. . .

[Defense Counsel]: Currently, let's just use 2010 as our benchmark, how often do you have pain in a typical week?

[Appellant]: In a typical week, after the accident, like my life change is differently. Before I was more active. Not anymore. To the point that my daughter, my 13–year–old daughter is no longer living with me and living with her father and my sister in New York because she said that she gots [sic] bored of being home, just coming from school to home in [her] room while I be laying in bed not doing nothing.

[Defense Counsel]: Okay. In an average week, how many—you said that your pain comes and goes. Seven[-]day week, how many days do you have pain out of seven, a typical week?

[Appellant]: Three to four days.

. . .

[Defense Counsel]: Okay. Of the three to four times a week that you have pain, where are you having pain? Do you still have all the symptoms, the neck, the back, the left leg, the left arm, the head, or has it narrowed in scope?

[Appellant]: Like my numbness comes in the middle of the night. My leg numbness, I hate that because I get spasm and then I cannot move my leg or my arm. And I feel like I get really bad sleeping, during the night.

And then the back, like the back, I always feel the back. I always have back pain, especially over here. And then over here in my neck, over here.

. . .

[Defense Counsel]: What activities did you used to do that you cannot do currently as a result of these injuries?

[Appellant]: I was very active in my children's activity [sic] at school. Take them out to the movies. They like that. Any things [sic] where they wanted to go, I was always there. Okay, like let's go, let's go. Now it's like, no, I pass.

. . .

[Defense Counsel]: Other than not being able to go to the movies with your kids, is there anything else that you used to be able to do that you can't do now that you attribute to the injuries from this accident?

[Appellant]: Like my kids are in violin and chorus. Before I was always there. Never missed any activities that they had. Now I do. Especially to [sic] my little one now.

[Defense Counsel]: You miss chorus?

[Appellant]: I miss chorus many times for my daughter, and that is the reason why she got furious of [sic] me. I missed a violin presentation for my son.

[Defense Counsel]: And this is why? Why are you missing these things?

[Appellant]: Because when it's there, either I have to be standing because usually there's no chair to be sitting down and I'll have to be standing. And I'm like I don't feel like standing all this time in there, in the auditorium.

. . .

[Defense Counsel]: Anything else other than missing school activities and not being able to go to the movies that you used to do that you can't do now?

. . .

[Appellant]: I was single. And when I was dating my husband—at the time of the accident I was dating my husband, and I was more active, sexually active.

And now he's complaining because we're not active. And we spend weeks without doing anything, and then he's really complaining every day that's the symptom. Every day he says the same thing. Every day, every day, every day. I'm sick of it, but I think I got him sick of it.

. . .

[Defense Counsel]: You were talking about the fact that you don't drive as often anymore. Before this, how often did you drive?

[Appellant]: I would have to drive, every time, every second everywhere.

[Defense Counsel]: And now how often do you drive?

[Appellant]: Like right now I don't drive at all.

. . .

[Defense Counsel]: Does it physically hurt you to drive?

[Appellant]: Physically, it depends on the trip. If the trip is long, yes, it physically hurts. If it's not too long, it doesn't drive. I feel more comfortable being driven that having to drive.

[Defense Counsel]: And that comfort level comes from you just don't like to drive anymore?

[Appellant]: I don't want no pain. I avoid everything that has to do that generates pain.

[Defense Counsel]: And driving generates pain for you?

[Appellant]: Uh huh.

. . .

[Defense Counsel]: What else generates pain for you?

[Appellant]: Standing, sitting for long period of time.

[Defense Counsel]: When you have to sit for a long time, what happens?

[Appellant]: After a while, it gets pain. And I can't sit straight and sit still. I have to-like the posture I got, change it.

. . .

[Defense Counsel]: The driving, the relationship with your husband, the school activities with your children, and the weight gain. Anything else that you use to do that you feel you can't do that you feel is specifically related to this accident?

[Appellant]: When I was working, like before I was working for long hours and I didn't mind. Now I can't do that.

[Defense Counsel]: What kind of hours did you work before?

[Appellant]: I'm the type of employee that I get my job done. I don't look at the time to get it done. Like my back tells me like, hello, you have to get up.

Appellant's Deposition, 6/23/10, at 72–74, 78–79, 87–89, 95–97.

The trial court concluded that Appellant had not established that she suffered a "serious injury," primarily for the following reasons.

[Appellant] returned to work within two weeks of the accident. She continues to do her job as an accountant; in fact, she opened her own business and quit her work in business accounting. Although [Appellant] received medical treatment immediately after the accident, she has not received any treatment for anything since July 10, 2008. Thus all medical treatment ceased within nine months of the accident. Although in her deposition [Appellant] complained about occasional pain in different areas, she has never sought any further treatment. . . . Moreover, an independent medical examination in June 2011 concluded that [Appellant] recovered from the injuries

from the accident and that she had preexisting degenerative changes.

Trial Court Opinion, 2/8/13, at 6.

 After careful review, we conclude the trial court erred in granting Appellee's motion for summary judgment. Looking at the record in the light most favorable to Appellant, she has shown that she was diagnosed with no less than eight ailments, which her treating physician stated to a reasonable degree of medical certainty were a direct result of the accident in this case. *See* Letter of Dr. Steven Allon, 12/11/08, at 2–3. Furthermore, Appellant has described at length how her daily life has changed because of the pain she has and continues to endure. *See* Appellant's Deposition, 6/23/10, at 72–74, 78–79, 87–89, 95–97. In our view, "reasonable minds could . . . differ [as to] whether a serious injury had been sustained[ ]" by Appellant. *Washington, supra; see also Kelly v. Ziolko,* 734 A.2d 893, 899–900 (Pa.Super.1999) (concluding issue of fact existed as to whether plaintiff suffered a serious injury where plaintiff "suffers pain in his neck, back, and knees, and intermittent numbness in two toes on his left foot[,] . . . asserted that his back pain occurs as a result of physical activity or sitting for long periods of time; he has trouble sleeping, cannot run, is unable to walk or sit for longer than 15 minutes, and finds it difficult to play with his child[ ]").

Although the trial court noted that she ceased medical treatment in 2008, the record reveals that the reason for this was that she did not have health insurance to continue to pay for the treatment. Appellant's Deposition, 6/23/10, at 69–70, 86. Furthermore, Appellant also stated that the medical coverage on her automobile insurance was exhausted. *Id.* We also respectfully disagree with the trial court that summary judgment was warranted because Appellant was declared to have re-

covered from all injuries from the accident in June 2011, three and one-half years afterwards. As noted above, "[a]n impairment need not be permanent to be serious." *Robinson, supra.* Our Supreme Court has declared that whether a plaintiff suffers a serious injury "should be made by the jury in all but the clearest of cases[.]" *Washington, supra.* Based on the above-mentioned considerations, we cannot agree with the trial court that Appellee has overcome this presumption.

Based on the foregoing, we conclude the trial court abused its discretion when it granted Appellee's motion for summary judgment.[2] *See Petrina, supra.* Accordingly, the trial court's October 1, 2012 order is reversed, and the case is remanded for further proceedings, consistent with this opinion.

Order reversed. Case remanded. Jurisdiction relinquished.

---

2. Due to our resolution of Appellant's second issue, we need not address her remaining two issues on appeal.