J-A23041-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| SANDRA KITCHEN AND SAMUEL KITCHEN, W/H AND CHRISTIAN KITCHEN, A MINOR BY HIS PARENTS AND GUARDIANS SAMUEL KITCHEN AND SANDRA KITCHEN | : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : | |
| JEROME KRUMAN | : : : | |
| APPEAL OF: CHRISTIAN KITCHEN | : : | No. 1078 EDA 2017 |

Appeal from the Order Entered March 6, 2017
In the Court of Common Pleas of Bucks County
Civil Division at No(s): 2010-05166

BEFORE: PANELLA, DUBOW, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.: **FILED NOVEMBER 03, 2017**

Appellant, Christian Kitchen, appeals from an order granting summary judgment to Appellee, Jerome Kruman, in this personal injury action arising out of a motor vehicle accident. Appellant argues that the trial court erred in granting summary judgment because a genuine issue of material fact exists as to whether his injuries satisfy the limited tort threshold of "serious impairment of bodily function." 75 Pa.C.S. § 1702. We affirm.

The trial court accurately set forth the factual and procedural history of this case as follows:

_____

[*] Former Justice specially assigned to the Superior Court.

On June 23, 2008, Appellant was the front seat passenger in a vehicle driven by his mother. Appellee was operating his vehicle in the opposite direction. The vehicles collided when Appellee turned left in front of Appellant's mother's vehicle. Following the accident, Appellant was taken to Frankford hospital where x-rays were taken. Appellant was subsequently discharged and directed to undergo physical therapy for approximately two months for a right knee injury.

Appellant's injury was described as a bone bruise caused by his knee hitting the vehicle's dashboard upon impact. Dr. Grady, an orthopedist that examined Appellant soon after the accident, believed that there was also an injury to the posterior cruciate ligament, but that the ligament was still intact. Dr. Grady was aware that Appellant "was an active boy who was enrolled in sports camp," so he instructed Appellant to wear a right knee brace.

Appellant alleged that the knee pain returned once he began "vigorous activities" approximately six months after he completed physical therapy. Appellant returned to see Dr. Grady in July of 2009. Appellant was diagnosed with mild "patellofemoral pain syndrome." Approximately one year later, Appellant returned again to Dr. Grady, complaining of right knee pain and "popping" caused by running. Appellant underwent an MRI. Dr. Grady recommended that Appellant continue stretching exercises.

Appellant was initially deposed on April 15, 2011. Appellant testified that he was quite active and participated in a variety of sports. Appellant testified that he almost always has to stop to take a break while playing sports due to right knee pain. Appellant used to wear a knee brace while playing sports, however, he outgrew it and no longer uses it.

Appellant appeared for another deposition on March 30, 2016. Appellant testified that he was twenty years of age and is in the Navy Reserve. Prior to Navy "boot camp," Appellant underwent medical examinations and physical fitness tests required by the Navy. Appellant successfully met the physical fitness requirements, including running

one and one-half miles in under twelve and one-half minutes. Appellant was also able to complete all of the physical activity requirements during the two months of Navy boot camp. Appellant maintains a job at a local Wawa and works approximately thirty to forty hours per week. As part of his job duties, Appellant is required to lift boxes and remain on his feet throughout his shift.

Appellant has not received any medical treatment for his knee since 2011. Specifically, Appellant did not undergo a MRI, x-ray, surgery, or injections in his knee. Additionally, Appellant has not been examined by his primary physician or orthopedist since 2011. Appellant was seen in 2015 by an urgent care physician who directed Appellant undergo a MRI for the knee pain. Appellant never went to get the MRI.

At Appellant's second deposition, Appellant testified that although his knee was not bothering him at the moment, he was nonetheless "limited" because of it. Appellant testified that his knee causes him pain when he is "running and stopping and making hard cuts and turns." When asked if there are any daily activities besides running that he is unable to complete, Appellant testified that he is unable to lift "certain heavy things" or drive for very long periods, such as the seventeen hour road trip he took with a friend the week prior.

An independent medical examination of Appellant was conducted on September 7, 2016. The report stated that Appellant had no pain, no tenderness, and full range of motion in his right knee. Further, the report notes that any complaints of right knee pain are unrelated to the injury suffered by Appellant in the accident eight years earlier. Dr. Elia determined that Appellant remained extremely active following the accident and that residual pain can be attributed to Appellant's "excessive activity level." Finally, Dr. Elia opined that the injury has been resolved and that Appellant can continue performing all activities as tolerated with no restrictions.

At the time of the accident, Appellant was twelve years old. Thus, this action was filed by Appellant's parents on his behalf. However, Appellant's parents also asserted

individual claims against Appellee. On August 25, 2011, the matter was marked settled, discontinued, and ended as to Appellant's mother and father. Thus, Appellant's negligence claim is the sole remaining Count in this matter.

On October 25, 2016, Appellee filed a Motion for Summary Judgment. Appellee asserted that as a passenger in his mother's vehicle, Appellant is bound by his mother's limited tort option pursuant to his parent's motor vehicle insurance policy. As such, the only issue for this Court to consider was whether Appellant sustained a sufficiently "serious injury" to maintain an action for noneconomic loss. *See* 75 Pa. C.S.[] § 1705. The Court granted Appellee's Motion for Summary Judgment on March 6, 2017. On March 30, 2017, Appellant filed a Notice of Appeal.

Trial Ct. Op., 5/19/17, at 1-4 (record citations omitted). Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises two issues in this appeal:

1. Whether the lower court abused its discretion in granting summary judgment and dismissing [Appellant's] action[] by arbitrarily concluding that his chronic injuries did not create serious impairments of body function sufficient to overcome the limited tort restrictions of the Motor Vehicle Financial Responsibility Law, despite substantial impairment of his athletic, military, and other daily activities from adolescence to adulthood.

2. Whether [Appellant] is entitled to have a jury decide if his chronic injuries created serious impairments of body function sufficient to overcome the limited tort restrictions of the Motor Vehicle Financial Responsibility Law, in accordance with the meaning of that statute as interpreted by related case law.

Appellant's Brief at 7.

J-A23041-17

Our standard of review in an appeal from an order granting summary judgment is well settled:

> Our review of the trial court's grant of summary judgment is plenary. Summary judgment is proper where the pleadings, depositions, answers to interrogatories, admissions and affidavits and other materials show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. We must view the record in the light most favorable to the opposing party and resolve all doubts as to the existence of a genuine issue of material fact in favor of the nonmoving party. We will reverse the trial court's grant of summary judgment only upon an abuse of discretion or error of law.

***412 North Front Street Assocs., LP v. Spector Gadon & Rosen, P.C.***, 151 A.3d 646, 660 (Pa. Super. 2016) (citation omitted).

We will address both of Appellant's questions together, because they both concern the same issue: whether a genuine issue of material fact exists in this limited tort case as to whether Appellant's injuries constitute a "serious impairment of bodily function" under the Motor Vehicle Financial Responsibility Law ("MVFRL"), 75 Pa.C.S. §§ 1701-1799.7.

The MVFRL provides in relevant part:

**§ 1705. Election of tort options**
…
**(d) Limited tort alternative.**—Each person who elects the limited tort alternative remains eligible to seek compensation for economic loss sustained in a motor vehicle accident as the consequence of the fault of another person pursuant to applicable tort law. **Unless the injury sustained is a serious injury,** each person who is bound

- 5 -

by the limited tort election shall be precluded from maintaining an action for any noneconomic loss . . . .[1]

75 Pa.C.S.A. § 1705(d) (emphasis added). The Motor Vehicle Code defines "serious injury" as "[a] personal injury resulting in death, **serious impairment of body function** or permanent serious disfigurement." 75 Pa.C.S. § 1702 (emphasis added). In determining whether a motorist has suffered a serious injury, "the threshold determination [is] not to be made routinely by a trial court judge . . . but rather [is] left to a jury unless reasonable minds [cannot] differ on the issue of whether a serious injury had been sustained." ***Washington v. Baxter***, 719 A.2d 733, 740 (Pa. 1998). "Several factors must be considered to determine if the claimed injury is 'serious': '[1] the extent of the impairment, [2] the length of time the impairment lasted, [3] the treatment required to correct the impairment, and [4] any other relevant factors.'" ***Graham v. Campo***, 990 A.2d 9, 16 (Pa. Super. 2010) (citation omitted). "The focus of these inquiries is not on the injuries themselves, but on how the injuries affected a particular body function." ***Washington***, 719 A.2d at 740 (citation omitted)*.* "An impairment need not be permanent to be serious." ***Id.***

Appellant relies primarily on ***Cadena v. Latch***, 78 A.3d 636 (Pa. Super. 2013), and ***Kelly v. Ziolko***, 734 A.2d 893 (Pa. Super. 1999), for the

_____

[1] This provision has several exceptions, but none are relevant here. ***See*** 75 Pa.C.S. § 1705(d)(1)-(3).

proposition that the trial court erred in granting summary judgment to Appellee on the issue of "serious impairment of bodily function." In *Cadena*, following a motor vehicle accident, the plaintiff refused emergency care, thinking the injuries were not bad enough for an ambulance or hospitalization; missed only one week from work as an accountant; never refilled initial pain medication; went on vacations; testified that her pain had decreased; took only Motrin as needed for shoulder pain; gained some weight; was uncomfortable standing; missed some of her children's school functions; was not as sexually active after the collision; and did not drive as much in order to avoid pain. *Id.*, 78 A.3d at 637. She also stopped all medical treatment nine months after the accident. *Id.* at 643. Subsequently, her physician determined that she suffered multiple ailments as a result of the accident, including cervical radiculitis, lumbar radiculitis, bilateral C5 radiculopathy, left-sided C6 radiculopathy, L4–L5 radiculopathy, cervical sprain and strain, lumbrosacral sprain and strain, lumbar disc bulging, DJD, and multilevel lumbar HNP. *Id.* at 640. This Court held that the trial court erred by granting summary judgment to the defendant:

> Looking at the record in the light most favorable to Appellant, she has shown that she was diagnosed with no less than eight ailments, which her treating physician stated to a reasonable degree of medical certainty were a direct result of the accident in this case . . . Furthermore, Appellant has described at length how her daily life has changed because of the pain she has and continues to endure . . . Although the trial court noted that she ceased medical treatment in 2008, the record reveals that the reason for this was that she did not have health insurance

to continue to pay for the treatment . . . Furthermore, Appellant also stated that the medical coverage on her automobile insurance was exhausted . . . We also respectfully disagree with the trial court that summary judgment was warranted because Appellant was declared to have recovered from all injuries from the accident in June 2011, three and one-half years afterwards. As noted above, [a]n impairment need not be permanent to be serious.

*Id.* at 643-44 (citations omitted).

In **Kelly**, because of a motor vehicle accident,

[the plaintiff] sustained injuries to his neck, lower back, and suffered numbness in his face and toes . . . [H]e suffers pain in his neck, back, and knees, and intermittent numbness in two toes on his left foot. Immediately following the accident he was taken to Good Samaritan Hospital's Emergency Room where he was given a soft collar for his neck and discharged less than two hours later in stable condition . . . As a result of his injuries, he has undergone a course of physical therapy and taken an MRI which indicated that he suffers from a herniated disk . . . He was subsequently put on pain medication and voluntarily sought and received treatments for his injured back from a local chiropractor. He described his daily discomfort in his lower back as a "dull, achy pain." He has knee pains approximately once a week.

[H]is back pain occurs as a result of physical activity or sitting for long periods of time; he has trouble sleeping, cannot run, is unable to walk or sit for longer than 15 minutes, and finds it difficult to play with his child . . . He also contends that he is no longer able to engage in the following recreational activities: riding his mountain bike, riding his motorcycle, and hunting.

[He] returned to work only three days after the accident; he was able to return to his full work duties within a short period of time. Part of his work duties included lifting drywall and performing carpentry-related tasks . . . Clinically, [he] sought follow-up medical treatment from the effects of the accident *three weeks* following said

accident. Furthermore . . . the doctor who diagnosed his herniated disk did not recommend surgery. [He] *voluntarily* sought chiropractic treatment for his back injuries. [His] treatment during recovery involved physical therapy, the use of a TENS unit, and exercise.

[He] remains gainfully employed in his former occupation with minor limitations on lifting heavy objects. Although he claims he is restricted in his recreational activities, he receives no treatment or prescriptive medication for his pain . . . .

With regard to the extent of his impairment, one of [his] physicians testified that because he continues to experience pinching sensations in his leg from the herniated disk, this condition is most likely permanent. Depending upon the level of heavy activity he performs in the future, his condition may stabilize or worsen over time.

*Id.*, 734 A.2d at 899-900 (citations omitted; italics in original). This Court held that while this case was "less clear-cut" than other cases, the trial court erred by granting summary judgment and should have sent the issue of serious bodily injury to the jury.[2] *Id.* at 900.

---

[2] For other limited tort cases in which this Court has held that a jury must decide the question of serious impairment of bodily function, *see Robinson v. Upole*, 750 A.2d 339, 341, 343 (Pa. Super. 2000) (although plaintiff returned to work at unspecified point, she suffered chronic pain syndrome, fibromyalgia and sleep impairment, has severely reduced ability to perform recreational activities and had to hire housekeeper); *Hellings v. Bowman*, 744 A.2d 274, 276 (Pa. Super. 1999) (plaintiff was admitted to emergency room with severe low back pain and bilateral leg pain, underwent MRI which revealed herniated disk, degenerative disc disease and facet arthrosis, subsequently was diagnosed with lumbar radiculopathy secondary to herniated disc, missed six weeks of work, treated with chiropractor for three months, continued to treat regularly with family physician, could no longer ride in car without pain, stopped or greatly limited various recreational activities, and continued to suffer knee numbness, sharp hip pain, back
*(Footnote Continued Next Page)*

In the present case, Appellant was in a motor vehicle accident when he was twelve years old. He argues that he suffered

> serious injuries manifested by chronic symptoms that have persisted for nearly 9 years, which are not alleviated or corrected with medical care; and which have substantially impacted and impaired his life and activities since adolescence and into adulthood with almost daily knee pain that:
>
> a. Required him to completely stop playing sports 2 out of every 5 times that he tried to play[;]
>
> b. Required him to temporarily stop playing sports 4 out of every 5 times that he tried to play[;]
>
> c. Caused him to quit playing basketball, football, baseball, soccer, and rugby[;]
>
> d. Caused him to quit running track[;]
>
> e. Prevented him from helping his parents with lawn care[;]
>
> f. Required him to use topical medications in order to function[;]
>
> g. Required him to modify his training activities in Navy boot camp[;]
>
> h. Still affects his ability to walk[;]
>
> i. Still requires him to wear a knee brace[;]

_(Footnote Continued)_  ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

spasms, hand cramping, and frequent headaches); and **_Furman v. Shapiro_**, 721 A.2d 1125, 1127 (Pa. Super. 1998) (bulging disc suffered in motor vehicle accident prevented plaintiff from remaining in one position for long periods, prevented her from walking distances, forced her to curtail work schedule, affected her ability to bathe her daughter, and continued to persist on date of her deposition more than three years after accident).

j. Still impairs his ability to run[;]

k. Still impairs his ability to stand for long periods[;]

l. Still impairs his ability to ascend stairs[;]

m. Still prevents him from pushing a snow blower[;]

n. Still impairs his ability to drive distances[;]

o. Still impairs his ability to lift heavy objects[;]

p. Still prevents him from doing leg and lower body exercises at the gym[; and]

q. Still prevents him from kneeling or crawling on his knees[.]

Trial Ct. Op. at 5.

The trial court justified its decision to grant summary judgment to Appellee as follows:

The Court granted Appellee's Motion for Summary Judgment because the Court found that reasonable minds could not differ on the conclusion that Appellant's knee injury was not serious such that a body function has been seriously impaired. The Court determined that any impairment resulting from Appellant's right knee injury is *de minimis*.

Following the accident, Appellant was seen by an emergency room doctor and underwent x-rays before being discharged shortly thereafter. Appellant's ultimate diagnosis was a bone bruise and mild patellofemoral pain syndrome. Appellant's treatment for his injury was not extensive. Appellant was directed to undergo two months of physical therapy and wear a knee brace while playing sports. Appellant was seen by an orthopedist several times during the two years after the accident, but has not sought any medical treatment for his knee over the past six years.

- 11 -

Appellant's knee injury appears to have had little to no impact on his normal daily activities. Appellant continued to maintain a very active lifestyle and participated in numerous sports following the accident. Appellant initially wore a knee brace while playing, but testified that he outgrew the brace and therefore chose to no longer wear one. Appellant asserted that his injury required him to frequently take breaks while playing sports and that he still has difficulty completing weight-training exercises that engage the lower body. Nonetheless, several years after the accident, Appellant joined the Navy and successfully passed medical and physical fitness testing in order to do so. Appellant also underwent Navy "boot camp", where he was required to engage in particular vigorous physical activities several times per week over the course of two months. Finally, Appellant maintains a job where he is required to stand for eight hour spans without more than alleged soreness by the end of his shift.

While Appellant has self-reported that his knee injury still limits him, the September 2016 independent medical examination of Appellant strongly contradicts this argument . . . [T]he examination report states that Appellant had full range of motion in his right knee and that any complaints of right knee pain are unrelated to the injury suffered in the 2008 accident. The doctor characterized any residual pain as a by-product of Appellant's "excessive activity level."

Appellant has failed to show that his injury has had such an impact on him such that it constitutes a serious injury. Thus, the Court found that Appellant was unable to overcome the limited tort threshold of his parent[s'] insurance policy. In accordance with the ***Washington*** holding, the Court determined that summary judgment was proper here because reasonable minds could not differ that Appellant's injury was not serious, evidenced by Appellant's vigorously active lifestyle, his failure to offer sufficient evidence of serious impairment, and the 2016 examination report detailing the condition of Appellant's knee and the complete lack of any pain or tenderness.

Trial Ct. Op. at 8-10.

We agree with the trial court's analysis, and we offer several additional observations. First, the Rules of Civil Procedure require the non-moving party—herein, Appellant—to "identify[] one or more issues of fact arising from evidence in the record controverting the evidence cited in support of the [summary judgment] motion." Pa.R.Civ.P. 1035.3(a)(1). Here, Appellant totally failed to controvert Dr. Elia's assessment in his 2016 independent medical examination that Appellant remained extremely active following the accident, and that residual pain is attributable to Appellant's "excessive activity level." Appellee's Motion For Summary Judgment, exhibit B, at 5. Thus, unlike **Cadena**, **Kelly**, and the other decisions cited above, any pain that Appellant continues to experience is the product of his own lifestyle, not the result of the motor vehicle accident. Furthermore, the day-to-day lives of the plaintiffs in the above cases were seriously impaired; Appellant suffered minimal impact in comparison, and far from enough to classify it as serious impairment of bodily function.

For these reasons, we affirm the trial court's order granting summary judgment to Appellee.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/3/2017