J-S26015-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| ROBERT WALKER | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| EDWARD AIKEN, JR. | : | No. 1640 WDA 2019 |

Appeal from the Order Dated October 15, 2019
In the Court of Common Pleas of Allegheny County Civil Division at
No(s): GD-17-008522

BEFORE:   MURRAY, J., McLAUGHLIN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY MURRAY, J.:                          FILED JUNE 11, 2020

Robert Walker (Appellant) appeals from the order granting the motion
for summary judgment filed by Edward Aiken, Jr. (Aiken) in this personal
injury case.  Upon review, we reverse and remand for further proceedings.

On the morning of December 2, 2016, Appellant was driving his pickup
truck on Browns Hill Road in Pittsburgh.  Appellant had motor vehicle
insurance at the time.  As discussed below, he had opted for a "limited tort"
policy, as defined by the Motor Vehicle Financial Responsibility Law (MVFRL).
Aiken was driving behind Appellant.  When Appellant slowed his vehicle, Aiken
failed to stop in time and collided with the rear of Appellant's truck.  Appellant
was transported by ambulance to a nearby emergency room.  Appellant

_____

[*] Retired Senior Judge assigned to the Superior Court.

informed the treating physician that he was suffering from back and neck pain. X-rays of Appellant's spine did not reveal any fractures. Appellant's doctor diagnosed him with "acute lumbar strain," prescribed ibuprofen, and released him that day, with instructions to follow up with his primary care physician.

Two days later, Appellant returned to the emergency room with similar complaints of back and neck pain. An MRI was performed, which revealed worsening of pre-existing degeneration of vertebrae in Appellant's cervical spine.[1] Appellant was prescribed muscle relaxants and analgesic medication, and instructed to follow up with a repeat MRI and consultation with neurosurgery.

On several occasions between February and September 2017, Appellant sought treatment for his back and neck pain at Revive Chiropractic and Rehabilitation. Appellant reported little success with pain reduction from chiropractic treatments.

Beginning in June 2017, Appellant sought treatment at the DNA Advanced Pain Treatment Center. He was treated by Yeshvant Navalgund, M.D. (Dr. Navalgund), and his partner, Louis Olegario, M.D. (Dr. Olegario). Appellant complained of neck and back pain, shoulder pain, muscle spasms, and impaired range of motion. Dr. Navalgund determined that Appellant would benefit from a cervical epidural steroid injection. Thereafter, Appellant

_____

[1] It is undisputed that Appellant had cervical issues prior to the accident.

followed up with Dr. Olegario, and reported a 60% reduction in his overall pain, but stated that he still suffered cervical pain. Accordingly, Dr. Olegario performed a "bilateral facet joint block" on Appellant's cervical spine, which, according to Appellant, relieved 50% of his cervical pain.

On June 9, 2017, Appellant filed a complaint against Aiken, asserting one count of negligence. Appellant sought economic and non-economic (pain and suffering) damages. Concerning the latter, Appellant claimed that the accident caused him to suffer "serious injuries" to his back and neck, such that he was entitled to non-economic damages under his limited tort insurance policy.[2, 3] Appellant additionally claimed that Aiken's negligence caused "aggravation of pre-existing medical conditions … and injuries, including a C7-

_____

[2] Section 1705 of the MVFRL provides:

> (d) Limited tort alternative.-- Each person who elects the limited tort alternative remains eligible to seek compensation for economic loss sustained in a motor vehicle accident as the consequence of the fault of another person pursuant to applicable tort law. Unless the injury sustained is a serious injury, each person who is bound by the limited tort election shall be precluded from maintaining an action for any noneconomic loss ....

75 Pa.C.S.A. § 1705(d) (emphasis added). There are certain exceptions set forth in subsection 1705(d); however, none of them apply in this case.

[3] Section 1702 of the MVFRL defines "serious injury" as a "personal injury resulting in death, serious impairment of body function or permanent serious disfigurement." 75 Pa.C.S.A. § 1702 (emphasis added).

T1 disc bulge[.]" Complaint, 6/9/17, at ¶ 12. Aiken filed an answer and new matter in response. Appellant filed a reply to the new matter.

Appellant retained Dr. Navalgund as a medical expert. On July 13, 2018, Dr. Navalgund issued a report, which we discuss further below. Appellant also testified by deposition on July 19, 2018.

On October 3, 2019, Aiken filed a motion for partial summary judgment (S/J Motion),[4] asserting that Appellant failed to present sufficient evidence to sustain a claim for non-economic damages. Appellant filed a response in opposition.

In the interim, Appellant gave Aiken notice of a scheduled deposition of Appellant's expert, Dr. Navalgund. Additionally, a pre-trial conference was scheduled to occur on October 21, 2019.

On October 15, 2019, the trial court conducted an evidentiary hearing on the S/J Motion. Argument was confined to whether Appellant was entitled to non-economic damages under the circumstances. At the close of argument, the trial court entered an order granting the S/J motion (the S/J Order).[5]

_____

[4] Though the S/J Motion did not contain the word "partial," it is undisputed that Aiken was not seeking dismissal of the entire case.

[5] The trial court utilized the proposed order submitted by Aiken's counsel; the trial court signed and dated the order, and crossed out the language underlined in the following excerpt:

On October 23, 2019, Appellant filed a motion for reconsideration. That same day, Aiken filed an emergency motion for protective order, requesting that the trial court cancel the deposition of Dr. Navalgund. The trial court granted Aiken's emergency motion and cancelled Dr. Navalgund's deposition. The court entered an order the next day denying Appellant's motion for reconsideration.[6]

Appellant filed a timely notice of appeal, followed by a court-ordered Pennsylvania Rule of Appellate Procedure 1925(b) concise statement. On January 3, 2020, the trial court issued a two-page memorandum in lieu of opinion. Initially, the court stated that Appellant's "selection of the limited tort auto insurance precluded <u>only</u> the <u>non</u>-economic damages. Whether [Appellant] suffered any injuries related to the accident for which [Aiken] may be held responsible shall first be decided in court." Trial Court Opinion, 1/3/20, at 2 (underline in original, capitalization omitted); see also id. (stating that the S/J Order is not appealable, as it "did not preclude [Appellant] from proceeding to trial on the damages permitted under [Appellant's] Limited Tort Option."). The court further opined:

_____

> "[I]t is hereby ordered ... that the within Motion for Summary Judgment <u>Based on Lack of Evidence to Support Pain and Suffering Damages</u> ... is hereby granted[.]"

Order, 10/15/19 (some capitalization omitted).

[6] Further, the pre-trial conference scheduled for October 21, 2019 was cancelled.

Some of [Appellant's] alleged injuries were actually symptoms. The argument and evidence available established that [Appellant's] cervical pain was not <u>specifically</u> caused by the accident, given the fact that preexisting cervical degeneration had been diagnosed and acknowledged. There was insufficient evidence as to what degree did the <u>accident</u> impact [Appellant], if at all. Segments of [Appellant's] deposition referenced by defense counsel also convinced this court that the problems [Appellant] experienced were not serious as defined by [section 1702 of the MVFRL].

Id. (underline in original, capitalization omitted).

On appeal, Appellant presents nine issues for review:

I.     Whether the Trial Court abused its discretion and/or otherwise committed an error of law in granting … [Aiken's] Motion for Partial Summary Judgment when genuine issues of material fact exist as to the nature and extent of Appellant's injuries and whether [] Appellant sustained a serious impairment of a body function, when the issue should have been determined by the trier of fact?

II.     Whether the Trial Court abused its discretion and/or otherwise committed an error of law in ruling that a genuine issue of material fact did not exist in this case?

III.     Whether the Trial Court abused its discretion and/or otherwise committed an error of law in granting [Aiken's] Motion for Partial Summary Judgment in violation of Pa.R.C.P. 1035.2(1)[,] when a genuine issue of material fact exists as to whether [] Appellant suffered a serious impairment of a body function in the accident at issue?

IV.     Whether the Trial Court abused its discretion and/or otherwise committed an error of law in granting [Aiken's] Motion for Partial Summary Judgment where Appellant was entitled to trial by jury on all issues?

V.     Whether the Trial Court abused its discretion and/or otherwise committed an error of law in dismissing the case in its entirety in granting [Aiken's] Motion[,] which was not on its face seeking dismissal of the civil action in total[,] but rather only sought partial summary judgment on the issue

of serious impairment of a body function[,] which would have precluded Appellant from recovering only noneconomic damages?

    VI.    Whether the Trial Court abused its discretion and/or otherwise committed an error of law in dismissing the entire case and disposing of Appellant's economic damages claims[,] when [Aiken's] Motion only specifically sought to dismiss noneconomic damages claims, which would have allowed Appellant's economic damage claim to proceed to trial by jury?

    VII.    Whether the Trial Court abused its discretion and/or otherwise committed an error of law in its entirety when genuine issues of material fact remained regarding Appellant's ability to plead, prove, and recover economic damages in the form of past excess medical bills?

    VIII.    Whether the Trial Court abused its discretion and/or otherwise committed an error of law in dismissing Appellant's case in its entirety when genuine issues of material fact remained regarding Appellant's ability to plead, prove, and recover economic damages in the form of future projected reasonable and necessary medical costs?

    IX.    Whether the Trial Court abused its discretion and/or otherwise committed an error of law by granting [Aiken's] Motion for Partial Summary Judgment by failing to properly apply the legal standard of review, i.e., viewing the facts in the light most favorable to the non-moving party ([] Appellant), when in fact[,] Appellant adduced sufficient evidence in the form of medical records, deposition testimony, and a medical expert report to support his contention that he sustained a serious impairment of a bodily function and thus, precluding the grant of summary judgment in [Aiken's] favor?

Appellant's Brief at 5-8 (citations to record omitted).[7]

_____

[7] The headings of the issues Appellant sets forth in the argument section of his brief do not correspond to the issues in the statement of questions

We first address whether this appeal is premature and interlocutory. See Bombar v. W. Am. Ins. Co., 932 A.2d 78, 85 (Pa. Super. 2007) (stating "an appeal will not lie from an order granting partial summary judgment." (citation omitted)). Appellant, pointing to the trial court's opinion, states that he "agrees [] this case should have proceeded to trial on the issue of economic damages, and then the issue of whether the trial court improperly granted [Aiken's S/J M]otion should have been appealed." Appellant's Brief at 36 (citing Trial Court Opinion, 1/3/20, at 2, supra (expressing that matters of liability and any economic damages shall first be decided in court)). Appellant contends "[t]he trial court is opining that this case should have gone to trial on economic damages, but [it] also played the key role in dismissing this case. The trial court has now issued orders and an opinion in direct contradiction of each other." Appellant's Brief at 37. Appellant asserts that "[t]he trial court took away all means of Appellant to proceed to trial by canceling the pre-trial conference, the video-taped expert deposition, and the jury trial." Id. We agree.

Our review reveals that Appellant's arguments are supported by the record. We likewise discern contradictory actions/representations by the trial court. The court, by its S/J Order and subsequent actions (i.e., cancellation of Dr. Navalgund's deposition and the pre-trial conference), dismissed

_____

presented. See Pa.R.A.P. 2119(a). However, we overlook this minor defect, as it does not impede our review.

- 8 -

Appellant's entire case and put him out of court. Therefore, Appellant's appeal is not interlocutory. See Pa.R.A.P. 341(a) (providing that "an appeal may be taken as of right from any final order of a ... trial court,"); see also Gordon v. Gordon, 439 A.2d 683, 686 (Pa. Super. 1981) (en banc) (stating "if the practical consequence of the order by the trial court is effectively to put an appellant 'out of court' the order will be treated as final." (citation omitted)).

Moreover, the trial court correctly opined that Appellant is entitled to a jury trial on matters of liability and economic damages. Accordingly, we reverse the trial court's order and remand to the trial court for further proceedings on these matters.

However, we also must determine whether the trial court appropriately concluded that Aiken was entitled to summary judgment on Appellant's claim for non-economic damages.

Appellant argues that a genuine issue of material fact exists concerning the nature and extent of his injuries, as well as whether he sustained "serious impairment of body function," which should have been determined by a fact-finder. See Appellant's Brief at 16, 24-29.

We apply the following standard in reviewing the grant of a motion for summary judgment:

> [S]ummary judgment is only appropriate in cases where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Pa.R.C.P. 1035.2(1). When considering a motion for summary judgment, the trial court must

take all facts of record[,] and reasonable inferences therefrom[,] in a light most favorable to the non-moving party[,] and must resolve all doubts as to the existence of a genuine issue of material fact against the moving party. An appellate court may reverse a grant of summary judgment if there has been an error of law or an abuse of discretion. Because the claim regarding whether there are genuine issues of material fact is a question of law, our standard of review is de novo and our scope of review is plenary.

Nicolaou v. Martin, 195 A.3d 880, 891-92 (Pa. 2018) (some citations omitted). "Only when the facts are so clear that reasonable minds could not differ can a trial court properly enter summary judgment." Straw v. Fair, 187 A.3d 966, 982 (Pa. Super. 2018) (citation omitted); see also Cadena v. Latch, 78 A.3d 636, 639 (Pa. Super. 2013) (explaining "[i]f there is evidence that would allow a fact-finder to render a verdict in favor of the non-moving party, then summary judgment should be denied." (citation omitted)).

Moreover, the Pennsylvania Supreme Court has explained that in determining whether a motorist has suffered a serious injury under Section 1705 of the MVFRL, "the threshold determination [i]s not to be made routinely by a trial court judge …, but rather[, should] be left to a jury unless reasonable minds could not differ on the issue of whether a serious injury had been sustained." Washington v. Baxter, 719 A. 2d 733, 740 (Pa. 1998) (emphasis added).

In determining whether a plaintiff suffered serious impairment of a body function under Section 1702 of the MVFRL, courts employ a two-prong inquiry:

a) What body function, if any, was impaired because of injuries sustained in a motor vehicle accident?

- 10 -

b) Was the impairment of the body function serious? The focus of these inquiries is not on the injuries themselves, but on how the injuries affected a particular body function. Generally, medical testimony will be needed to establish the existence, extent, and permanency of the impairment. In determining whether the impairment was serious, several factors should be considered: the extent of the impairment, the length of time the impairment lasted, the treatment required to correct the impairment, and any other relevant factors. An impairment need not be permanent to be serious.

Id. at 740 (citation and ellipses omitted); see also McGee v. Muldowney, 750 A.2d 912, 915 (Pa. Super. 2000) (stating that a plaintiff must generally present "objective medical evidence as to the degree of any impairment and extent of any pain suffered" relative to an automobile accident). Additionally, "evidence of how a particular injury affects a specific plaintiff, including how that injury negatively impacted the person's ability to perform his or her chosen profession, is relevant in determining whether a plaintiff has suffered a serious impairment of a body function." Vetter v. Miller, 157 A.3d 943, 948 (Pa. Super. 2017).

Here, Appellant argues that the trial court erred in determining that:

(1) "[s]ome of [Appellant's] alleged injuries were actually symptoms"; Trial Court Opinion, 1/3/20, at 2;

(2) The injuries were not specifically caused by the accident, particularly "given the fact that preexisting cervical degeneration had been diagnosed and acknowledged." Id.

(3) Appellant's injuries were not "serious," under section 1702 of the MVFRL. See id.

Appellant counters that the evidence, when viewed in the proper light, establishes:

- 11 -

Appellant presented evidence that, although there [were] pre-existing cervical issues, he sustained cervical radiculopathy, cervical facet injuries, and exacerbation of preexisting cervical degenerative disc disease as a direct result of the December 2, 2016 crash. This was brought into evidence through Dr. [] Navalgund's expert report. The evidence is in direct contradiction with the trial court's opinion. There is evidence of record of actual injuries, and not just symptoms, directly related to the accident at issue. In addition, there was escalated treatment and a clear exacerbation of his pre-existing condition.

Appellant's Brief at 25 (citations to record omitted).

The record supports Appellant's argument. In his expert report, Dr. Navalgund recounted Appellant's treatment history, concluding:

[Appellant] ... suffered injuries to the cervical spine following the motor vehicle accident. These injuries include cervical radiculopathy with cervical disc herniation, cervical facet injuries and exacerbation of preexisting cervical degenerative disease[.] Based on my personal examination, clinical expertise and review of [Appellant's] records, it is my medical opinion that these injuries occurred as a direct result of the rear-end motor vehicle accident on 12/02/16. There is no evidence that the prior cervical issues were a problem prior to the motor vehicle accident on 12/02/2016.

[Appellant's] injuries that occurred on 12/02/2016 are a result of traumatic force being applied to the cervical spine at the level of the intervertebral disc and cervical facet joint. The cervical herniation causes pressure around the cervical nerves leading to inflammation and damage to the corresponding nerve roots. This is evidenced by the EMG/NCS demonstrating the cervical radiculopathy. In addition, the cervical facet joint space and surrounding tissue was injured in the motor vehicle accident. This occurred with the uncontrolled movement of the spine when [Appellant] was struck from behind. Unfortunately, there is a scarring and thickening of the joint capsule once this injury occurs, leading to permanent and persistent cervical spine pain. Therefore, it is in my medical opinion that [Appellant] will require further treatment moving forward.

It is also my medical opinion that the prognosis for [Appellant] is guarded. There is a high medical probability that [Appellant] will need to undergo [] repeated [medical procedures on his cervical spine in the near future.[8]]

Report, 7/13/18, at 4-5 (unnumbered; emphasis and footnote added).

Moreover, Appellant in his deposition testified:

(1) Appellant was forced to miss three months of work, in his field as a "stationary" engineer/plumber, N.T, 7/19/18, at 12;

(2) following Appellant's return to work, he was unable, and remains unable, to perform duties that he had been capable of prior to the accident (including climbing onto boilers and turning pipe wrenches), id. at 27;

(3) Appellant cannot turn his head without feeling significant pain, and this hampers his ability to operate a car, id. at 28;

(4) Appellant cannot lift his arms for more than several seconds without feeling pain, and the pain sometimes causes sleep difficulties, id. at 22, 28;

(5) the pain has rendered Appellant unable to perform many daily activities that he could do before the accident; these include cutting the grass, carrying groceries or heavy objects, engaging in swimming, baseball, fishing and golf, and picking up and playing with his grandchildren. Id. at 28-29, 31, 32.

We conclude that this evidence, when properly viewed in the light most favorable to Appellant, could cause reasonable minds to differ as to whether Appellant sustained a serious injury attributable to the motor vehicle

_____

[8] Dr. Navalgund opined that these procedures, and other follow-up care, will cause Appellant to incur significant expenses, which will total well over $50,000. See Report, 7/13/18, at 5 (unnumbered); see also id. (stating that Appellant must undergo these procedures for "no less than 10 years.").

accident.[9]  See Cadina, 78 A.3d at 643 (holding that an issue of fact existed concerning whether plaintiff suffered a serious injury attributable to an automobile accident where plaintiff (1) proffered her treating physician's opinion that plaintiff's multiple ailments resulted from the accident; (2) stated how her daily life has changed due to the pain she continued to endure; (3) treated at a hospital, missed one week of work, and was prescribed pain medication).  See also Kelly v. Ziolko, 734 A.2d 893, 899-900 (Pa. Super. 1999) (holding that issue of fact existed regarding whether plaintiff suffered a serious injury from an automobile accident where plaintiff (1) went to the emergency room following the accident and was discharged two hours later; (2) had an MRI that revealed a herniated disc; (3) "suffers pain in his neck, back, and knees, and intermittent numbness in two toes on his left foot[,]" (4) underwent a course of physical therapy and sought treatment for his pain from a chiropractor; and (5) "asserted that his back pain occurs as a result of physical activity or sitting for long periods of time; he has trouble sleeping,

_____

[9] The fact that Appellant had pre-existing degenerative cervical disease does not alter our conclusion.  See, e.g., Boggavarapu v. Ponist, 542 A.2d 516, 518 (Pa. 1988) (stating that "[p]ain, of varying degree, may indeed follow small injury and be greater in its consequence than the initial blow.  It may aggravate existing defects of the person, exploding latent diseases or precipitate, into present pain, what otherwise might have passed or been long delayed, absent the immediate injury." (emphasis added)); see also Cingota v. Milliken, 428 A.2d 600, 602, 604 (Pa. Super. 1981) (stating that a defendant may be held liable for his or her negligence regardless of whether the personal injuries suffered by the plaintiff originated from the injury occasioned by defendant's negligence or aggravation of plaintiff's pre-existing injury/disease).

cannot run, is unable to walk or sit for longer than 15 minutes, and finds it difficult to play with his child[.]"); cf. Washington, 719 A.2d at 741 (concluding that reasonable minds could not differ as to whether plaintiff's alleged injury from an automobile accident – arthritis in his foot – was "serious" under sections 1702 and 1705, where the emergency room physician stated the injury was mild; plaintiff missed only five shifts of his employment (where he performed most of his work on his feet); the treatment of the injury was not extensive; and plaintiff was able to engage in normal work and daily activities). Accordingly, we reverse the trial court's order and remand for further proceedings as to Appellant's claim for non-economic damages.

Order reversed. Case remanded for proceedings consistent with this memorandum. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/11/2020